Staff Sergeant Kenneth L. HODGES,
Plaintiff-Appellant,

v.

Howard H. CALLAWAY, Secretary of the
Army, U. S. A., and Major General Or-
win Talbott, Commanding General, Fort
Benning, Georgia, Defendants-Appellees.

No. 73–2499.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 18, 1974.

Frank K. Martin, Columbus, Ga., for plaintiff-appellant.

William Schloth, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Captain Royce C. Lamberth, JAGC, U. S. Army, c/o U. S. Atty., Macon, Ga., for defendants-appellees.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, District Judge.

GOLDBERG, Circuit Judge:

On June 1, 1972, the Department of the Army directed the Commanding General of Fort Benning, Georgia to grant Staff Sergeant (E–6) Kenneth L. Hodges an honorable discharge as soon as possible "for the convenience of the Government." Then midway through his second six-year period of enlistment in the army, Sergeant Hodges was understandably unwilling to see his hopes for a military career so abruptly terminated, even for the price of an honorable discharge. Accordingly, on June 7, 1972, two days before the date set for his separation, Sergeant Hodges invoked the assistance of the United States District Court for the Middle District of Georgia.

As subsequent amendments to the pleadings made clear, the gravamen of Hodges' complaint was that though ostensibly ordered "for the convenience of the Government," the discharge was in fact designed as punishment for Hodges' participation in the tragic events at My Lai 4, Republic of South Vietnam, on March 16, 1968.[1] Recogniz-

---

1. In March 1968 appellant Hodges was a member of Company C, 1st Battalion, 20th Infantry, 11th Infantry Brigade, Americal Division, under the immediate command of Captain Ernest Medina. Hodges completed his first period of enlistment and was honorably discharged in May 1969, whereupon he immediately reenlisted. Subsequently the Army brought criminal charges against Hodges for his part in the My Lai tragedy, but the charges were finally dropped in August 1970 after an investigation pursuant to Article 32 of the Uniform Code of Military Justice, 10 U.S.C. § 832.

On August 3, 1971, appellant received a letter from the Adjutant General of the Army informing him that a complete administrative review had been conducted at Department of the Army Headquarters in Washington, D. C., to determine whether his duty performance at My Lai had met expected professional standards. As a result of this review, the Army Chief of Staff had received a recommendation that "certain adverse actions be taken" because of "substandard performance of duty," and he in turn had recommended that Hodges be honorably discharged and barred from future reenlistment in the Army. The letter informed appellant that he could submit a written rebuttal by August 30, and enclosed a statement of the factual basis for the recommended action. It also informed him of his right to have military counsel, if he desired, to assist in the preparation of the rebuttal.

Appellant did submit a written rebuttal to the Department of the Army. On December 29, 1971, he learned that his rebuttal had been considered, that he could submit fur-

ing that the Army's actions did comply with the procedures established in Army Regulation [AR] 635–200 for discretionary "convenience discharges" and apparently conceding the constitutional validity of those procedures, Hodges insisted that in his case the Army should have followed the procedures outlined in AR 635–212 for discharges based on misconduct.[2] Alleging that the pretextual "convenience" discharge contravened his right to due process of law, Hodges sought a temporary restraining order to halt his discharge pending a hearing on the merits of his claim and ultimately an injunction against his discharge pending compliance with the applicable regulations and "minimum concepts of fairness."

For over a year the district court stayed the Army's discharging hand in order to preserve the status quo pending disposition of the case on its merits. Following an evidentiary hearing in May 1973, however, the district court on June 20, 1973, granted a partial summary judgment for defendants-appellees and dismissed Hodges' complaint for failure to state a claim and for want of subject matter jurisdiction.[3] Now a civilian,[4] Hodges asks us to reverse the district court and order the Army to follow the procedures set forth in AR 635–212. Notwithstanding the importance of Hodges' challenge to the action taken below, our attention to the merits of appellant's position is deflected at the threshold by a jurisdictional problem not detected by either the parties or the district court.[5]

Although federal courts are not totally barred from barracks rooms and billets, our access is restricted. Writing for this Court in Mindes v. Seaman, 5 Cir. 1971, 453 F.2d 197, 201, Judge Clark framed a general statement of our authority:

> a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a con-

---

ther information if he wished, but that he could not have a personal appearance. He apparently never learned the nature of the "administrative review" board, its composition, or the names of the witnesses consulted by it. Apparently he was told throughout that his discharge was based on his substandard conduct at My Lai. According to appellant, the letter of August 3, 1971, and the succeeding events clearly demonstrate that with the honorable discharge the Army was attempting to do indirectly what it had been unable to do directly—punish him for his action at My Lai.

2. It is by now well-settled that federal courts may review claims that a branch of the military failed to comply with its own regulations. *See, e. g.,* Peavy v. Warner, 5 Cir. 1974, 493 F.2d 748, 750; Denton v. Secretary of the Air Force, 9 Cir. 1973, 483 F.2d 21, 24–25; United States ex rel. Sledjeski v. Commanding Officer, 2 Cir. 1973, 478 F.2d 1147, 1150; Silverthorne v. Laird, 5 Cir. 1972, 460 F.2d 1175, 1186. *See generally* Lunding, Judicial Review of Military Administrative Discharges, 83 Yale L.J. 33, 53–56 (1973).

3. The district court granted summary judgment for the defendants on the issue of whether the Army had followed the proper regulations and procedures in discharging Hodges. Insofar as Hodges alleged that the Secretary's discharge decision was otherwise subject to judicial review, the court concluded that the Secretary had acted within the bounds of his discretion, and dismissed those allegations for lack of subject matter jurisdiction and for failure to state a claim. In view of our holding, *infra,* that the district court should have refused to entertain the suit because of Hodges' failure to exhaust available administrative remedies, we need not review those holdings below. Of course we intimate no view regarding their correctness as a matter of fact or law.

4. In the June 20, 1973, order dismissing Hodges' complaint, the district judge included a ten day stay of the mandate to allow Hodges to apply to the Fifth Circuit for additional injunctive relief pending review on the merits. On July 2, 1973, a panel of this Court stayed Hodges' discharge, but on July 16 we declined a motion for further stay. On July 23 Mr. Justice Powell denied a motion for stay in the Supreme Court, and on August 3, 1973, Hodges was honorably discharged.

5. At oral argument we asked the parties for supplemental briefs on the question of exhaustion of intraservice administrative remedies. We have carefully considered those briefs in arriving at our decision that exhaustion must be required.

stitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (B) exhaustion of available intraservice corrective measures.

The first portion of this formula may often be the more difficult to apply, for not all allegations technically within its perimeters are reviewable. Thus the trial court must "examine the substance of [the] allegation in light of the policy reasons behind nonreview of military matters," balancing, *inter alia*, the nature and strength of the challenge to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which the exercise of military expertise or discretion is involved. *Id.* At the same time, concentration on the balancing act required to measure the sufficiency of the allegations should not obscure the importance of the second portion of the *Mindes* formula—the exhaustion requirement.

Beginning with McCurdy v. Zuckert, 5 Cir. 1966, 359 F.2d 491, cert. denied, 1966, 385 U.S. 903, 87 S.Ct. 212, 17 L. Ed.2d 133, this Court has firmly adhered to the rule that a plaintiff challenging an administrative military discharge will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies. *Accord,* Davis v. Secretary of the Army, 5 Cir. 1971, 440 F.2d 817; Stanford v. United States, 5 Cir. 1969, 413 F.2d 1048; Tuggle v. Brown, 5 Cir., 362 F.2d 801, cert. denied, 1966, 385 U.S. 941, 87

S.Ct. 311, 17 L.Ed.2d 220. For purposes of this requirement, two types of administrative bodies provide review of discharge decisions.[6] The Army Discharge Review Board [ADRB], established pursuant to 10 U.S.C. § 1553 (1974 Supp.) and 32 C.F.R. § 581.2 (1973), has authority to review the type of discharge given and to direct the Adjutant General to "change, correct, or modify any discharge or dismissal, and to issue a new discharge . . . ." 32 C.F.R. § 581.2(a)(1) (1973). Established pursuant to 10 U.S.C. § 1552 (1970) and 32 C.F.R. § 581.3, the Army Board for Correction of Military Records [ABCMR] is to "consider all applications properly before it for the purpose of determining the existence of an error or injustice," 32 C.F.R. § 581.3(b)(2) (1973), and may "correct any military record . . . to correct an error or remove an injustice." 10 U.S.C. § 1552(a).[7]

■■■ As previous decisions of this Court should have made clear, our basic exhaustion principle has two important corollaries. First, as with exhaustion of administrative remedies in other contexts, the exhaustion doctrine in review of military discharge decisions is subject to limitations or exceptions. The most important of these is that only those remedies which provide a real opportunity for adequate relief need be exhausted. Stated somewhat differently, exhaustion is inapposite and unnecessary when resort to the administrative reviewing body would be futile.[8] For example, a plaintiff obviously need not appeal to

6. For a study of the powers and procedures of these review bodies and an analysis of the exhaustion requirement, see Everett, Military Administrative Discharges—The Pendulum Swings, 1966 Duke L.J. 41, 62–67, 72 (1966); Lunding, *supra* note 2; Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 U.Va.L.Rev. 483, 497–503, 520–25 (1969); Williams, The Army Board For the Correction of Military Records, 6 Mil.L.Rev. 41 (1959). *See also* Meador, Judicial Determination of Military Status, 72 Yale L.J. 1293 (1963).

7. Generally both the Discharge Review Boards and the Boards for Correction of Military Records require exhaustion of any other available intraservice review procedures prior to appeal to them. Lunding, *supra* note 2, at 37–42. Moreover, appeal normally lies first to the DRB, then to the BCMR; if, however, the DRB has no jurisdiction to grant the relief requested, a complainant may go directly to the BCMR. *Id.* at 41; Everett, *supra* note 6, at 65.

8. *See* Lunding, *supra* note 2, at 70–71; Sherman, *supra* note 6, at 497–498.

the particular DRB or BCMR if the relief requested is not within the authority or power of those bodies to grant.[9]

■ The second corollary to our basic exhaustion principle is that having once determined the applicability of the exhaustion doctrine, a district court generally may not further entertain a complaint until the requirement is satisfied. If the suit was filed after discharge, the court may not retain jurisdiction while the plaintiff resorts to administrative review.[10] And if the suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies. This latter result is required by the authorizing statute in cases in which the desired relief falls within the bailiwick of the DRB, for those bodies are limited to post-discharge reviews, 10 U.S.C. § 1553(a) (1974 Supp.). This Court has also directed this result when the requested relief lies within the competence of a BCMR, notwithstanding the statutory authority of BCMR's to entertain pre-discharge appeals and the willingness of some of those boards to do so if a court will stay discharge pending administrative review.[11]

■ Examination of the case *sub judice* in light of these two corollaries to the exhaustion doctrine clearly reveals the error below. Although appellant initially alleged that he had exhausted available intraservice remedies, it is quite clear that he has not yet attempted appeal to either the ADRB or the ABCMR. Appellees have conceded that Hodges need not approach the ADRB since that body deals only with changes in the *type* of discharge, whereas Hodges is complaining basically of the

---

9. In Sims v. Fox, 5 Cir. 1974, 492 F.2d 1088, 1095, petition for rehearing en banc granted, 1974, 492 F.2d 1088, an Air Force second lieutenant sought to restrain the Air Force from granting him an honorable discharge that carried a separation designation number signifying discharge on the grounds of "unfitness and/or unsuitability" without affording him a hearing with minimal due process procedures. This Court agreed with the Air Force that resort to the Air Force DRB was unnecessary given the inability of that board to grant adequate relief to Lt. Sims.

It has been suggested that exhaustion of administrative remedies is inappropriate where it would cause irreparable injury to the plaintiff pending administrative review. *See, e. g.,* Lunding, *supra* note 2, at 72; Sherman, *supra* note 6, at 498. The *Sims* court recognized that, on the facts of that case, requiring the plaintiff to accept discharge and then seek administrative review could have a "substantial deleterious effect" on his future career were he ultimately to prevail, though the panel carefully noted that this factor alone was insufficient to place Sims' case in the category of exceptions to the exhaustion requirement. It has also been suggested that exhaustion should not be required in cases posing important constitutional questions over which the administrative review body has no special expertise or authority. Sherman, *supra* note 6, at 498. In the case *sub judice*, however, we need not catalogue the exceptions to the

exhaustion doctrine nor essay their full contours.

10. In Stanford v. United States, *supra*, a post-discharge challenge to a dishonorable discharge, we concluded that the suit was premature because the plaintiff had apparently not exhausted the administrative remedies. In Mindes v. Seaman, *supra*, where we restated the exhaustion requirement, exhaustion was not actually a problem because the plaintiff had, prior to filing suit, pursued all available intraservice procedural reviews, including a vain appeal to the Air Force BCMR.

11. *See* Everett, *supra* note 6, at 66–67; Lunding, *supra* note 2, at 40–42, 68 nn. 244, 245.

In McCurdy v. Zuckert, *supra*, the district court, though declining to enjoin an imminent general discharge, did retain jurisdiction of a pre-discharge suit while the plaintiff went to the Air Force BCMR. We reversed because BCMR review, which could repair any possible injury, was available after discharge; thus the suit was premature and the district court lacked jurisdiction. In Tuggle v. Brown, *supra*, we affirmed the district court's decision refusing to restrain the Air Force from granting the plaintiff an undesirable discharge and dismissing his complaint. For a summary of the conflicting decisions in other Circuits regarding the exhaustion requirement and the availability of pre-discharge relief, see Lunding, *supra*, at 69.

*fact* of discharge.[12] They stoutly insist, however, that he should be required to appeal to the ABCMR. Unable to see any compelling reason to place this case within the category of cases generally excepted from the exhaustion requirement, we agree.

It seems quite clear to us that the ABCMR can, if it determines that Hodges has been illegally discharged, grant him full reinstatement and restoration of all rights, thus in effect making him whole for any injury he might suffer from a wrongful discharge.[13] In addition, appellant Hodges complains of exactly the sort of injury for which the BCMR can supply effective and adequate balm.[14] The gravamen of the complaint is that the Army did not follow the proper regulations in processing his discharge; whether this is viewed as a legal or a factual question, the Army ought to be the primary authority for the interpretation of its own regulations. A decision by the ABCMR that the Army should have followed AR 635–212 might completely obviate the need for judicial review. If, on the other hand, the ABCMR concludes that AR 635–212 is inapplicable to the facts of this case and Hodges then seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body in the Army's own appellate system. *See* Nelson v. Miller, 3 Cir., 373 F.2d 474, 480, cert. denied, 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L. Ed.2d 980; Sohm v. Fowler, 1966, 124 U.S.App.D.C. 382, 365 F.2d 915, 918– 919.

Hodges argues that resort to the ABCMR in his case would obviously be futile and therefore ought not be required. Since the Secretary of the Army ordered this discharge, Hodges insists, the ABCMR would be very reluctant to find any significant error in Hodges' favor. Besides, the statute grants final approval over the Board's decision to the Secretary, and he most certainly would not countermand himself, regardless of the Board's recommendation.

Appellees offer several responses to this futility argument. Although we do not share their overly sanguine view regarding the efficacy of the intraservice administrative review procedures, we do agree that requiring Hodges to exhaust those remedies will not necessarily be an exercise in futility. According to the Army regulations implementing 10 U.S.C. § 1552, the ABCMR may not "deny an application

---

12. Supplemental Brief for Appellees at 1 n. 2, citing 32 C.F.R. § 581.2(a)(3) ; *see* Lunding, *supra* note 2, at 41 & n. 53.

13. *See* Everett, *supra* note 6, at 63; Lunding, *supra* note 2, at 41. One observer reports that reinstatement is almost never granted by the BCMR's and when used is generally limited to cases involving grievants near retirement. *Id.* at 41 n. 57. That the odds against Hodges receiving all the relief he desires from the administrative review are unquestionably very heavy is not by itself enough to justify labelling resort to the administrative remedy futile.

14. By contrast, in Sims v. Fox, *supra* note 9, this Court concluded that appeal to the Air Force BCMR was unnecessary because that body did not offer the prospect of adequate relief for the plaintiff's complaint. The essence of Lt. Sim's complaint was that the Air Force procedures denied him an opportunity to appear before the Personnel Board to present, either pro se or through counsel, his own arguments on the merits of his case. In other words, the complaint related to the existence of an alleged legal defect in the procedures available and the effect of this defect on Sims' constitutional rights. Under the regulations, the Air Force BCMR, like those for the other services, does not have to grant a hearing to a grievant, though it may do so. *See* Everett, *supra* note 6, at 63; Lunding, *supra* note 2, at 42. Thus the procedural defect that was the basis of Sims' complaint—the lack of a mandatory hearing where he could present his own defense—existed all the way through the administrative review system. Moreover, that defect could not be remedied by the discretionary hearing available from the BCMR, which in any event possesses no particular expertise over such a purely legal claim. Since the lack of any hearing prior to appeal to the BCMR virtually assured the creation of a flawed, imperfect record, any hearing granted by the BCMR might well be inadequate.

on the sole ground that the record was made by or at the direction of the President or the Secretary in connection with proceedings other than proceedings of a Board for the correction of military or naval records." 32 C.F.R. § 581.-3(c)(5)(ii). The BCMR's action is subject to judicial reversal if it is arbitrary, capricious, unsupported by substantial evidence, or erroneous in law. Sanford v. United States, 9 Cir. 1968, 399 F.2d 693; Hoorwitz v. Resor, D. Conn., 329 F.Supp. 1050, aff'd, 2 Cir. 1970, 445 F.2d 1407; Esgate v. United States, 186 Ct.Cl. 207, cert. denied, 1968, 395 U.S. 913, 89 S.Ct. 1759, 23 L.Ed.2d 226. Moreover, though the Secretary *may* overrule the Board's recommendations for relief, he cannot do so arbitrarily; if he rejects the Board's recommendations, he must provide either explicitly stated policy reasons, or his action must be supported by the record and evidence presented to the Board. Nelson v. Miller, 3 Cir., 373 F.2d 474, cert. denied, 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L. Ed.2d 980; Weiss v. United States, 1969, 408 F.2d 416, 418, 187 Ct.Cl. 1, 5; Hertzog v. United States, 1964, 167 Ct. Cl. 377, 384–385; Proper v. United States, 1957, 154 F.Supp. 317, 326, 139 Ct.Cl. 511.[15]

In any event, to base an exception to the exhaustion requirement on the fact that the final administrative decision is subject to the discretionary power of the Secretary would in effect turn the exhaustion doctrine on its head. Exhaustion is required in part because of the possibility that administrative review might obviate the need for judicial review. That the administrative process might not have this effect is not usually a reason for bypassing it. And since the Service Secretary always has the final say over decisions by both the DRB and the BCMR, appellant's futility reasoning would mean that exhaustion of intraservice remedies should always be excused. The administrative remedy

available to grievants like appellant Hodges may offer cold comfort and small consolation, but it is surely beyond our authority to permit the exceptions to the exhaustion doctrine to swallow the rule.

We recognize, of course, that considerable resources, judicial as well as combatant, have been expended since this litigation began over two years ago. And mindful of Mr. Justice Black's warning in another context against administrative procedures that exhaust the grievant before he can exhaust them, we are conscious of the burden on a plaintiff who at this stage of the game learns that he must begin anew at square one. Yet as serious as these considerations may be in Sergeant Hodges' individual case, we do not believe they justify overriding the exhaustion requirement. The exhaustion doctrine rests on legitimate and important policy objectives relating to the balance between military authority and the power of federal courts.[16] Adherence to the exhaustion requirement in cases presenting the type of challenge to administrative discharge decisions being mounted here will serve well these objectives.

For one thing, we can avoid premature court review that might upset the balance between the civilian judiciary and the military as a separate administrative and judicial system. We can prevent untoward, unreasonable interference with the efficient operation of the military's judicial and administrative systems and allow the military an opportunity to exercise its own expertise and rectify its own errors before a court is called to render judgment. Moreover, we can guard, at least in the future, against inefficient use of judicial resources by requiring "finality" within the military system and thus avoiding needless review.

Since the exhaustion requirement does apply in the instant case, our decisions in McCurdy v. Zuckert, *supra*, and Tug-

---

15. According to one observer, the Secretary of the Army in fact seldom denies relief requested by the ABCMR. Lunding, *supra* note 2, at 42 n. 61.

16. *See* McKart v. United States, 1969, 395 U.S. 185, 193–195, 89 S.Ct. 1657, 23 L.Ed.2d 194, 203–204; Sherman, *supra* note 6, at 497–499, 502–503, 520–525.

**424**

gle v. Brown, *supra,* command that the district court have no further jurisdiction over the case until the requirement be satisfied. Accordingly, we reverse the decision of the court below and remand the case with instructions to dismiss without prejudice for failure to exhaust intraservice administrative remedies.

We emphasize that our holding is only that Hodges approached the courthouse prematurely and that the court below erred in permitting him to enter without first surmounting the exhaustion hurdle. Hodges would synonymize pessimism with futility, but courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations. Certainly Kenneth L. Hodges did not surrender his right to due process of law when he doffed mufti. When he has completed his intraservice appeals, he is free to return in search of judicial review. The barricade erected by the exhaustion requirement does not completely block the courtroom door.

Reversed and remanded.