**Major Adolph H. KNEHANS, Jr., Appellant,**

v.

**Clifford L. ALEXANDER, Secretary of the Army.**

No. 76–1126.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1977.

Decided Oct. 3, 1977.

Rehearing Denied Nov. 3, 1977.

Joan E. Goldberg, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court with whom David Rein, Washington, D. C., was on the brief, for appellant.

Jordan A. Luke, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John R. Dugan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM, ROBINSON and ROBB, Circuit Judges.

Opinion for the court filed by TAMM, Circuit Judge.

Dissenting opinion filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

TAMM, Circuit Judge:

Our appellant, former Major Knehans, was honorably discharged from the United States Army pursuant to 10 U.S.C. § 3303 (1970)[1] for having been twice passed over for promotion by a Statutory Selection Board. In order to prevent his imminent discharge, Knehans brought an action in the United States District Court for the District of Columbia to invalidate it on grounds of procedural noncompliance, alleging that submission of his defectively constituted personnel file had rendered the review to which he was statutorily entitled a nullity. After Knehans had exhausted his available administrative remedies by unsuccessfully applying for relief from the Army

1. The pertinent provisions of this particular section read as follows:

    (a) In this subtitle, "deferred officer" means a promotion-list officer considered for promotion to the grade of captain, major, or lieutenant colonel under section 3299 of this title, but not recommended for promotion.

    \*   \*   \*   \*   \*   \*

    (d) A deferred officer who is not recommended by the next selection board considering officers of his grade and promotion list shall—

    \*   \*   \*   \*   \*   \*

    (3) if he is not eligible for retirement under section 3913 of this title or any other provision of law, be honorably discharged on such date as may be requested by him and approved under regulations to be prescribed by the Secretary of the Army, but not later than the first day of the seventh calendar month after the Secretary approves the report of that Board . . . .

10 U.S.C. § 3303(a), (d)(3) (1970).

Board for Correction of Military Records (ABCMR), *see generally id.* § 1552, the district court granted the Army's motion for summary judgment. *Knehans v. Callaway,* 403 F.Supp. 290 (D.D.C.1975). This appeal promptly ensued, in which Knehans advances essentially two distinct arguments: (1) that by statute his discharge was conditioned upon his promotion having been properly considered by two Statutory Selection Boards and that consideration of his properly compiled file by an Army Standby Advisory Board was insufficient compliance with that condition; and (2) that he had a due process right to a hearing because his discharge implicated his constitutionally protected interests in "liberty" and "property". For the reasons which follow, we affirm.

■ We treat appellant's last contention first since it is the least compelling and may thus be disposed of expeditiously. Knehans asserts that "[a]lthough this court has advanced the view that a hearing is necessary where an officer suffers a loss of liberty, and damage to reputation and loss of employment is defined as liberty, the court below held otherwise." Appellant's Brief at 18. The short answer to this is that whatever "liberty" interest Knehans may have had in his reputation, *see Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), has not been impinged by the mere fact of his honorable discharge and nonretention in the Army,[2] *see Board of Regents v. Roth,* 408 U.S. 564, 572–75, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), especially since the reasons for his nonpromotion were never publicly disseminated, *compare* Appellant's Reply Brief at 13 *with Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882,

51 L.Ed.2d 92 (1977) *and Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and, secondly, that he had no constitutionally protected entitlement to continued active duty as a commissioned officer in the Army since, absent more, any objectifiable expectancy supporting such an entitlement was sufficiently negated by the express provisions of 10 U.S.C. § 3303 (1970).[3] *See generally Pauls v. Secretary of the Air Force,* 457 F.2d 294, 297 (1st Cir. 1972). In sum, we find no reason whatsoever to fault the district court's analysis of appellant's procedural due process claims based on asserted liberty and property interests.

■ As to appellant's other argument, it is undisputed that both Selection Boards reviewed a personnel file on appellant which in certain respects was not strictly in accord with Army directives. Knehans views this oversight as automatically voiding his discharge and, at the same time, as entitling him to retention in the service at least until two new Selection Boards have been convened at one-year intervals to consider his promotability on the basis of a proper file. Fortunately, we are not required by the circumstances presented here to accept this extreme position, interfering as it would with personnel matters better left in most cases to the discretion of the military, *compare Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) *with Mindes v. Seaman,* 453 F.2d 197, 201 (5th Cir. 1971), for he is entitled to no such relief either by statute or regulation.

Evincing some confusion on this point, appellant asserted in his brief that "[i]t is admitted herein that appellant has not been passed over by two statutory selection

---

**2.** Appellant characterizes the harm to his liberty as arising from a finding, in effect, that he was not "good enough" to be promoted. Appellant's Reply Brief at 12. This alleged "finding", which for purposes of this appeal we will accept as true, is hardly likely either to seriously harm this officer's reputational standing in his community or to foreclose his future opportunities to secure suitable gainful employment. *See generally Mazaleski v. Treusdell,* 183 U.S. App.D.C. 182, 192–196, 562 F.2d 701, 711–15 (1977). In this respect, appellant's reliance

upon *Rolles v. Civil Service Commission,* 168 U.S.App.D.C. 79, 512 F.2d 1319 (1975), involving charges that amounted to accusations of dishonesty, is clearly inapposite.

**3.** Nor does his longevity in the armed forces suffice by itself to create such an interest. *See, e. g., McNeill v. Butz,* 480 F.2d 314, 320–21 (4th Cir. 1973). *See also Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

boards . . .," Appellant's Brief at 10, which of course is incorrect for he quite certainly had been. It is true that subsequent to these two nonpromotion decisions the Army determined that one of several Officer Efficiency Reports had been improperly included in the review file[4] and that several letters of commendation which should have been included therein had not been.[5] Such a showing of error, however, does not nullify the Selection Boards' proceedings nor requires that appellant once again be considered by two separate ones, for nothing conditions the validity of Selection Board proceedings upon the review of a perfectly compiled personnel file. Though Army regulations do specify what documents are properly contained in an officer's selection file, AR 624–100 ¶¶ 16–17; J.A. 82–83, those same regulations provide:

> Selection board action is administratively final. Reconsideration for promotion will be afforded only in those cases where material error was present in the records of an officer when reviewed by a selection board. This determination will be made by Headquarters, Department of the Army.

*Id.* ¶ 18(b); J.A. 83. Thus, in this instance, appellant must take "the bitter with the sweet", and the fact that the Secretary of the Army subsequently directed a Standby Advisory Board[6] to evaluate the corrected file vis-à-vis a pool of others was simply an act of administrative grace about which appellant can scarcely complain.

■ By the same token, appellant's challenge to the ABCMR's proceedings[7] is, at bottom, irreconcilable with a long line of precedent in this circuit and others that, subject to certain exceptions inapplicable here, an aggrieved military officer must first exhaust his administrative remedies before his particular service's Board for Correction of Military Records prior to litigating his claims in a federal court. *See, e. g., Horn v. Schlesinger,* 514 F.2d 549, 551 (8th Cir. 1975); *Sohm v. Fowler,* 124 U.S. App.D.C. 382, 365 F.2d 915 (1966); *McCurdy v. Zuckert,* 359 F.2d 491 (5th Cir.), *cert. denied,* 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966). *Compare Ogden v. Zuckert,* 111 U.S.App.D.C. 398, 298 F.2d 312 (1961). This rule must logically rest on the proposition that such a Correction Board, charged with a responsibility to "correct an error or remove an injustice," 10 U.S.C. § 1552(a) (1970), has by implication sufficient authority to provide the relief appellant now seeks: full reinstatement and backpay. *See, e. g., Hodges v. Callaway,* 499 F.2d 417, 422 (5th Cir. 1974); *Sohm, supra,* 124 U.S.App.D.C. at 384, 365 F.2d at 917; *Ogden, supra,* 111 U.S.App.D.C. at 403–04, 298 F.2d at 317–18 (Burger, J., dissenting); *Caddington v. United States,* 178 F.Supp. 604, 147 Ct.Cl. 629 (1959). *See also* 10 U.S.C. § 1552(d) (1970).

■ In this respect, the Army's Correction Board is, as the district court properly characterized it, "a vital part of the promotion apparatus established by Congress," 403 F.Supp. at 294; *see Horn, supra,* 514 F.2d at 552; *Hodges, supra,* 499 F.2d at 422, and appellant must show that *its* decision not to reinstate him on the basis of a corrected file was arbitrary, capricious or otherwise unlawful. *See, e. g., Horn, supra,* 514 F.2d at 553 & n.14; *Yee v. United States,* 512 F.2d 1383, 1386, 206 Ct.Cl. 388 (1975). The district court concluded that he had failed to sustain his burden of proof in this regard, and we fully agree. *See Mindes v. Seaman,* 501 F.2d 175, 176 (5th Cir. 1974).

---

**4.** *See* 403 F.Supp. at 295.

**5.** *See id.* & n.4.

**6.** The Army Standby Advisory Board is a creature of regulation, AR 624–100, ¶ 18(b), rather than statute in contrast to the Selection Boards. *See generally* Ford, *Officer Selection Boards and Due Process of Law,* 70 Mil.L.Rev. 137, 151–52 (1975).

**7.** Appellant asserts further that the ABCMR gave no reason for its decision so that a reviewing court cannot know whether the basis for its decision not to recommend reinstatement was a proper one. Again, however, appellant's assertion departs rather substantially from reality. *See* J.A. 59, *quoted in* 403 F.Supp. at 292.

Not finding any of appellant's other arguments meritorious, the summary judgment awarded by Judge Jones is hereby

*Affirmed.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, dissenting:

I cannot accept the court's conclusions that the selection boards' consideration of appellant's improperly-constituted personnel file was not harmful error and that the failure of the Army Board for Correction of Military Records to reinstate appellant was not arbitrary. For reasons to be expressed, I would reverse the District Court's judgment and remand the case for a determination of whether the evidence establishes a substantial probability of prejudice emanating from the selection boards' proceedings.[1] That disposition of the case would incidentally eliminate, at least temporarily, the necessity of passing on appellant's due process claims—a bonus we should be eager to realize.[2] Because, however, my colleagues have treated the due process contentions unsatisfactorily, I feel obliged to comment upon them briefly.[3]

I

As stated in the majority opinion, appellant was honorably discharged from the United States Army pursuant to Section 3303,[4] which specifies that course for a commissioned officer who has not been recommended for promotion by either of two consecutive selection boards and who is not eligible for retirement. Although Section 3303 expressly conditions discharge on consideration for promotion by two selection boards functioning in direct succession, the statute applicable to Army selection board proceedings does not elaborate the elements of a candidate's record that must or must not be evaluated.[5] By implementing regulations, however, the Army has ruled certain materials admissible[6] and certain others inadmissible in a selection board proceeding.[7]

Appellee, the Secretary of the Army, admits, and the District Court assumed in reaching its decision,[8] that contrary to the regulations several letters commending appellant were omitted from the record reviewed by the selection boards, and that an officer efficiency report inadmissible under the regulations was considered by the

---

1. Part II *infra.*

2. Compare, *e. g., Langston v. Johnson*, 156 U.S. App.D.C. 5, 7, 478 F.2d 915, 917 (1973), and cases cited at notes 7–8 thereof.

3. Part III *infra.*

4. 10 U.S.C. § 3303 (1970).

5. The statute simply authorizes the Secretary of the Army to furnish to the board the names of officers to be considered for promotion. 10 U.S.C. § 3300(a)(1), (b)(1), (c) (1970).

6. Army Reg. 624–100 ¶ 16(d), Joint Appendix (J.App.) 82, provides for inclusion of letters of recommendation in a candidate's file:

   *Communications for selection boards.* No officer is authorized to appear in person before a selection board on his own behalf or in the interest of another officer who is in a zone of consideration.
   (1) An officer within a zone of consideration may write a letter to the selection board inviting attention to any matter of record in the Department of the Army concerning himself that he feels important in the consideration of his record. However, a commissioned officer being considered for Regular Army promotion will forward such letter through the appropriate Career Branch to the selection board (10 U.S.C. § 3297(e)).
   (2) Letters of commendation or appreciation and recommendations for promotion may be forwarded direct to the selection board.
   (3) Communications which contain criticism or reflect upon the character, conduct, or motives of any officer will not be given to a selection board.
   (4) Request for corrective special review of specific efficiency reports will not be included in letters directed to the selection board but may be forwarded to The Adjutant General, ATTN: AGPBFP Department of the Army, Washington, D. C. 20315. . . .

7. See note 6 *supra* and letter from Major J. Stone, Evaluation Report Branch, to Major Adolph H. Knehans, Jr. (Sept. 17, 1973), J.App. 15 (advising that an efficiency report had been voided and removed from appellant's records because he had served under the supervision of the rating officer for less than ninety days).

8. *Knehans v. Callaway*, 403 F.Supp. 290, 293 (D.D.C.1975).

boards. Because under well-settled princi-ples a governmental agency is legally bound to adhere to its own regulations,[9] the omis-sion of the letters of commendation and the inclusion of the efficiency report rendered appellant's file clearly defective.

Although my colleagues apparently con-cede this point, they opine that the validity of selection board proceedings does not de-pend upon review of a perfectly constituted personnel file. With this observation I ful-ly agree. But the question here is not whether any imperfection in a candidate's personnel file examined by a selection board fatally taints that proceeding. Rath-er, the issue is whether the mistake admit-tedly accompanying consideration of appel-lant's file was sufficiently severe to merit remedial measures. If the Army's blunder was in fact injurious to appellant, evalua-tion by the Army of the corrected file was mandatory, not simply an "act of adminis-trative grace" as the court asserts. As will be developed, I believe the evidence sug-gests a grave likelihood of prejudicial er-ror.[10]

## II

Admittedly, the District Court's function was not to review directly the determina-tions of the two selection boards that evalu-ated appellant's record, but to review the decision of the Army Board for Correction of Military Records (ABCMR) refusing to reinstate him. The ABCMR concluded that "insufficient evidence ha[d] been presented to indicate probable material error or injus-tice."[11] The District Court held, and my colleagues now affirm without discussion, that the ABCMR's decision was not arbi-trary.

I believe, however, that the District Court was overly deferential in its review of the ABCMR's decision. The court ob-served:

It is not so obvious that in the instant case the inclusion of the adverse OER and the absence of several letters of rec-ommendation would *necessarily* lead to a non-promotion decision by a Selection Board. . . . [I]n the absence of evi-dence that inclusion of the negative OER necessarily caused the non-promotion de-cisions, this court cannot say that the ABCMR's refusal to reverse those deci-sions was without a rational basis.[12]

Certainly, if a defect in a candidate's file "necessarily" would preclude his promotion, the defect would be harmful, and the ABCMR's failure to remedy it clearly would be reversible.[13] But even short of this, the ABCMR just as clearly would violate its duty to remove injustices and correct errors

9. *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Hammond v. Lenfest,* 398 F.2d 705 (2d Cir. 1968); see *Dunmar v. Ailes,* 121 U.S.App.D.C. 45, 348 F.2d 51 (1965).

10. Part II *infra.*

11. Quoted by the District Court, *Knehans v. Callaway, supra* note 8, 403 F.Supp. at 292.

Appellant argues that the ABCMR's holding is inconsistent with the Army's prior finding that inclusion of the defective efficiency report in his file was "material error" for purposes of invoking review by the Standby Advisory Board under Army Reg. 624–100 ¶ 18(b), J.App. 83. The Army's position, however, is not nec-essarily self-contradictory. The efficiency re-port was voided and removed from appellant's files without regard to its contents, see note 7 *supra.* Under Army policy, "material error"

for purposes of Advisory Board review exists whenever a "major change is made to an effi-ciency report that was seen by a selection board." Letter from Lieutenant Colonel James C. McCoy, Chief, Promotion Branch, to Joel W. Collins, Jr. (counsel for appellant) (Aug.. 2, 1973), J.App. 16. Advisory Board review, therefore, may be necessitated by elimination of an efficiency report from an officer's file, after the report has been viewed by a selection board, even though the presence of the report in the file would not have jeopardized the offi-cer's chances for promotion.

12. *Knehans v. Callaway, supra* note 8, 403 F.Supp. at 296 (emphasis in original).

13. See *Yee v. United States,* 512 F.2d 1383, 206 Ct.Cl. 388 (1975). Because the error in *Yee* was egregious, that decision would not require reversal on the facts of the present case, but it surely would not preclude it.

in servicemen's records [14] if it refused to rectify a mistake that likely prevented promotion. Thus, the District Court should have undertaken to ascertain whether a substantial threat of prejudice was established by the evidence, and if it was the ABCMR's refusal to reinstate should have been reversed as arbitrary.

In fact, the evidence raises serious doubts regarding the soundness of the ABCMR's determination. We are told that the defective efficiency report indicated a downward trend in appellant's performance,[15] and that could have been critically important to the decision of the selection boards, especially in view of the District Court's finding that appellant's record was otherwise "very good." [16] Moreover, the Chief of the Engineering Branch of the Corps of Engineers informed appellant by letter after the action of the first selection board that the efficiency report was a significant item in his file.[17] Although the letter indicated that the Engineering Branch did not participate in the decisionmaking process, its opinion bears on the materiality of the report; the Engineering Branch, in which appellant sought advancement, certainly was familiar with the considerations relevant to caliber of performance within that branch. In support of the decision of the ABCMR, the District Court noted a similar negative report that appellant had received earlier in his career regarding his performance while stationed in Okinawa.[18] Yet, such a report would not diminish the impact of the more recent but defective efficiency report since the mere existence of the second adverse report suggested continued inefficiency, which qualitatively altered the character of appellant's records.[19]

The District Court also concluded that the letters of commendation erroneously omitted from appellant's file were no more laudatory than the valid efficiency reports present in the file. Because the letters were therefore "cumulative in effect," the court held that the ABCMR "could rationally have concluded that their omission *did not result* in [appellant's] nonpromotion." [20] Even if the omission of the letters of commendation from appellant's file would not inexorably have precluded a favorable decision by the selection boards, it may have contributed to the Boards' nonpromotion decision significantly since the omitted letters manifested more universal approval of appellant's performance. Thus, in light of the doubts raised by the evidence, I would remand this case to the District Court for reevaluation of the question of prejudice by

**14.** See 10 U.S.C. § 1552 (1970); *Yee v. United States, supra* note 13, 512 F.2d at 1387, 206 Ct.Cl. 388. In *Reale*, 208 Ct.Cl. 1010, 1011 (1976), the court observed:

> The Board is to recommend action to correct "error" or "injustice," 10 U.S.C. § 1552. The two things are not the same. "Error" means legal or factual error. Normally, it is such that a court of law could correct it whether the soldier or sailor had first applied to a Correction Board, or not. If the Board when asked, fails to correct such an "error", courts will correct it on judicial review. "Injustice," when not also "error", is treatment by the military authorities, that shocks the sense of justice, but is not technically illegal. *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975).

The Army's transgression of its own regulations in this case, of course, constitutes legal error. See note 9 *supra* and accompanying text.

**15.** Brief for Appellant at 6–7.

**16.** *Knehans v. Callaway, supra* note 8, 403 F.Supp. at 296.

**17.** *Id.* at 295–296.

**18.** *Id.* at 295.

**19.** See Department of the Army, Promotion of Officers on Active Duty, app. §§ 3, 6, J.App. 88–89. Section 3 provides:

> The basic and most important single document in the officer's record is the efficiency report. The Manner of Performance section in each report must be closely examined. It is here that a pattern of strengths and weaknesses over a period of time will appear. . . . With each passing year the OEI, last computed in 1961, has less and less importance. . . .

See also Letter from Colonel Joseph A. Jansen, Chief, Engineer Branch, to Major Adolph H. Knehans, Jr. (June 15, 1972), J.App. 64.

**20.** *Knehans v. Callaway, supra* note 8, 403 F.Supp. at 295 n.4 (emphasis supplied).

the less restrictive standard of substantial probability as opposed to necessary effect.[21]

## III

On my view of this case, I would not reach appellant's Fifth Amendment due process contentions. Because, however, my colleagues have addressed the due process issues, and from my standpoint have resolved them unsatisfactorily, I am constrained to add a few remarks of my own.

First, unlike the majority, I am not at all convinced that appellant's claim of loss of liberty without due process can be "disposed of expeditiously." Appellant's discharge has not seriously damaged his "standing and associations in his community,"[22] and he would not be entitled to due process protection on that basis. But in *Roth*[23] the Supreme Court recognized a second prong to the liberty-interest test in cases involving termination of employment. The Court

held that governmental action that forecloses a range of employment opportunities deprives the affected person of a liberty interest:

[T]he State . . . did not invoke any regulations to bar the respondent [an assistant college professor] from all other public employment in state universities. Had it done so, this . . . would be a different case. For "[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury. . . ."[24] [A] state, in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities "in a manner . . . that contravene[s] Due Process,"[25] . . . and specifically, in a manner that denies the right to a full prior hearing.[26]

In the present case, the effect of appellant's discharge was not only to terminate his active duty in the Regular Army but also to prevent his reentering on active

**21.** In the event that prejudice is found, the further question would be whether the reconsideration for promotion afforded by the standby advisory board remedied the error. The standby advisory board is not a statutory body, and the Secretary has expressly disclaimed reliance upon the standby advisory board as a qualified substitute for the statutory selection boards, or upon action of the standby advisory board as a legally acceptable compliance with the statutory requirements for discharge. Brief for Appellee at 19–20. The Secretary does contend, however, that "it is fairer to afford promotion reconsideration by having a standby advisory board consider the officer under the same criteria [and in comparison to a sample of the same candidates] which the statutory Selection Board previously considered." *Id.* at 11 n.11. Otherwise, the officer would have to compete with a different, and perhaps better qualified, group of officers. *Id.* If standby advisory board action were designed solely to afford an officer the possibility of immediate relief from prejudicial error such action could indeed only benefit the officer; but an adverse ruling by an advisory board should not be used to cut off an officer's statutory right to *proper* consideration by two statutory boards. If an officer seeks reconsideration by two statutory boards after having been wrongfully denied promotion by two selection boards and denied relief by a standby advisory board, the Army can hardly refuse to afford the officer such reconsideration on the ground that it would be unfair to the officer to do so. If the officer

wishes to take his chances in a pool of potentially better candidates, that is his indubitable statutory right. If the subsequent pool of candidates for promotion is less qualified than the affected officer, the Army cannot deny the officer the advantage of consideration in that pool, which was necessitated by the Army's own serious error; nor would the Army have an interest in doing so, because thereby it would lose an admittedly superior officer.

**22.** *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972).

**23.** *Board of Regents v. Roth, supra* note 22.

**24.** Here citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817, 861 (1951) (Jackson, J. concurring).

**25.** Here citing *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957) (petitioner was not permitted to take the New Mexico bar examination and was thereby prevented from practicing law in New Mexico).

**26.** 408 U.S. at 573–574, 92 S.Ct. at 2707, 33 L.Ed.2d at 559, last citing *Willner v. Committee on Character*, 373 U.S. 96, 103, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224, 229 (1963) (petitioner passed the New York bar examination but was not admitted to the New York Bar).

duty as a reserve officer.[27] Appellant argues with some force that civilian work in the general area of his expertise and experience is qualitatively different from employment as an officer in the Army.[28] Thus, appellant raises a substantial claim that his discharge pursuant to Section 3303 effected a deprivation of his liberty to pursue a range of professional opportunities, thereby entitling him to due process protection.

Second, although I agree with my colleagues that appellant has not established the existence of the property interest requisite, I believe their formulation of this issue is inadequate. Contrary to their assertion, an objectifiable expectancy supporting an entitlement to continued duty as a commissioned Army officer was not necessarily negated by Section 3303. That provision authorizes discharge only if an officer is not recommended for promotion by two successive selection boards. Hence, an officer cannot be discharged under Section 3303 unless he is twice determined to be nonpromotable. This, without more, does not negate a legitimate claim of entitlement.

Section 3303, however, does not independently establish entitlement to continued employment because nothing therein suggests that the determinations of the selection boards are to be more than discretionary. The Army has promulgated criteria and guidelines to govern deliberations of

selection boards,[29] but they are not inclusive. A selection board need not base its decision on any single factor and no specific qualifications are essential to promotion.[30] Thus, a candidate apparently cannot be assured of a recommendation for promotion by satisfying any particular group of criteria.[31] Because a selection board's promotion decision involves so broad a range and so high a degree of discretion, an officer has no protected property interest in his Army officership.

These, then, are my thoughts on the constitutional aspects of this case. To repeat, I express them only to repel any notion that I concur in those advanced by my colleagues. As previously indicated, had my view of the case prevailed, we would simply reverse the District Court's judgment and remand for reconsideration on the issue of prejudicial error without reaching the constitutional questions at this time.

---

27. Letter from Colonel Robert J. Kirk, Deputy Director, Personnel Actions and Records, to Major Adolph H. Knehans, Jr. (Sept. 17, 1973), J.App. 71.

28. Reply Brief for Appellant at 14.

29. Department of the Army, Promotion of Officers on Active Duty (especially Appendix, "Guidance for Promotion Selection Boards"), J.App. 78–90.

30. Letter, *supra* note 11, J.App. 16. Although the existence of discretionary authority to discharge or to deny promotion does not per se raise constitutional problems, the improper exercise of such discretion may well violate equal protection guarantees found in the Fifth and Fourteenth Amendments. See *Schware v. Board of Bar Examiners, supra* note 25, 353 U.S. at 239, 246, 77 S.Ct. at 756, 760, 1 L.Ed.2d at 801–802, 805; *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). See generally *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

31. Compare *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (city ordinance provided that a permanent city employee might be discharged if his work is substandard, or if he is negligent, inefficient or unfit to perform his duties, but the Court refused to read the ordinance as prohibiting discharge for any other reason and as thus conferring tenure on permanent employees), with *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (eligibility criteria for welfare benefits gave rise to entitlement to benefits for those who satisfied those criteria).