Jeanette RHODES, Plaintiff-Appellee,

v.

The UNITED STATES of America and Clifford Alexander, Secretary of Army, Defendants-Appellants.

No. 76–2171.

United States Court of Appeals, Fifth Circuit.

June 12, 1978.

R. Jackson B. Smith, Jr., U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., William Kanter, John Cordes, Attys., Dept. of Justice, Civ. Div., App. Section, Rex E. Lee, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendants-appellants.

Percy J. Blount, Augusta, Ga., for plaintiff-appellee.

Before WISDOM, TJOFLAT and VANCE, Circuit Judges.

VANCE, Circuit Judge.

On June 12, 1973 at about 7:30 P.M., the plaintiff, Mrs. Jeanette Rhodes, was riding as a passenger in an automobile travelling in a southerly direction on U.S. Highway 25 in Richmond County, Georgia. Mrs. Rhodes claims that Mr. John Wendell Shealy drove an oncoming automobile across the highway center line and collided with the car in which she was riding. She apparently suffered very severe injury. Mr. Shealy was killed.

On the date of the accident Mr. Shealy was Major John Shealy of the Georgia Na-

tional Guard. He was on two weeks active duty for training with his guard unit at Fort Stewart, Georgia. He had requested and received authorization by his unit commander to drive a staff vehicle from Fort Stewart to Fort Gordon, Georgia to register for a college course, an activity encouraged by the guard. It was while he was en route to Fort Gordon that the collision occurred.

■ Mrs. Rhodes filed a claim for her injuries under the National Guard Claims Act, 32 U.S.C. § 715.[1] The U.S. Army Claims Service disallowed the claim on the ground that this trip was outside the scope of Major Shealy's employment. Mrs. Rhodes appealed that ruling to the Secretary of the Army before whom her appeal is still pending. During the interim, however, she filed this declaratory judgment proceeding pursuant to 28 U.S.C. § 2201 in the United States District Court for the Southern District of Georgia. She alleged that a controversy existed between her and the defendants as to the correct interpretation of 32 U.S.C. § 715(a), and particularly with respect to the meaning of "scope of employment."[2] She sought a declaration that at the time of her injury, Major Shealy was acting within the scope of his employment as a national guard officer.

[2] The district court recognized that ongoing administrative proceedings ordinarily are not subject to judicial review. It found, however, that in driving from Fort Stewart to Fort Gordon, Major Shealy was clearly within the scope of his employment and that in reaching a contrary conclusion

the claims division disregarded the army's own regulations. Citing *Oestereich v. Selective Service System Local Board No. 11, Cheyenne, Wyoming et al.*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the court granted the declaratory relief sought by Mrs. Rhodes and the government appealed. Because Mrs. Rhodes had not exhausted her administrative remedy, it is necessary that we reverse.

The National Guard Claims Act authorizes the Secretaries of the Army and Air Force to pay up to $25,000 to settle claims against the United States for personal injury caused by a member of the national guard while engaged in training and "acting within the scope of his employment." 32 U.S.C. § 715(a). By regulation a two-step settlement procedure has been established. In the case of the army national guard, initial claims determinations are made by the U.S. Army Claims Service in the Office of the Judge Advocate General. From this initial determination an appeal lies to the Secretary. It is apparent from the record that up to the filing of her complaint in the district court, Mrs. Rhodes had followed the required procedure.

The Act seems to contemplate a means for extending purely administrative relief. 32 U.S.C. § 715(g) provides: "Notwithstanding any other provision of law, the settlement of a claim under this section is final and conclusive." The government contends that by operation of this provision, all judicial review at any stage is precluded.

1. Mrs. Rhodes and her husband also brought tort actions against the United States and the executrix of Major Shealy's estate. The actions against the United States were voluntarily dismissed in September, 1975, apparently in recognition that the Federal Tort Claims Act does not provide a remedy against the United States for tortious conduct of a national guard member unless his unit has been called into federal service. See *Maryland, for the use of Levin v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

2. Army regulations define "scope of employment" in part as "[e]xpressly or impliedly directed or authorized by competent authority. . . ." 32 C.F.R. § 536.3(r). This definition is made applicable to claims involving national

guardsmen by § 536.140. "It is, of course, well settled that validly issued administrative regulations have the force and effect of law." *Rodway v. United States Department of Agriculture*, 168 U.S.App.D.C. 387, 392, 514 F.2d 809, 814 (1975). Mrs. Rhodes contends that the army's General Claims Division defied its own regulation. Her contention is supported by correspondence between her attorney and the Division, from which it appears that the Division ignored the regulation definition and applied a different test. We recognize, of course, that agencies of the government are bound by their own regulations. See *e. g., Service v. Dulles et al.*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

Arrayed in apparent opposition is the line of cases holding that judicial review is available when military officials have violated their own regulations.[3] The case before us does not require that we resolve this ultimate conflict.

Controlling here is the requirement that a litigant exhaust her administrative remedies, if such remedies exist, as a prerequisite to invoking the jurisdiction of the federal courts. *Myers et al. v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In *Public Service Commission of Utah et al. v. Wycoff Company, Inc.*, 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952), the supreme court affirmed that:

> [T]he declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review.

See also *Myers et al. v. Bethlehem Shipbuilding Corp., supra; Eccles et al. v. Peoples Bank of Lakewood Village, California*, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948). The court in *Wycoff* was speaking in a different context, but its statement of principle has equal application here as does its further statement concerning the use of declaratory judgments that: "[r]esponsibility for effective functioning of the administrative process can not be thus transferred from the bodies in which Congress has placed it to the courts." *Wycoff, supra*, 344 U.S. at 246, 73 S.Ct. at 242.

A broad statement of this rule, like broad statements of most comparable doctrines, is subject to exceptions. *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Exhaustion is not required when there is no adequate administrative remedy. *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *McNeese et al. v. Board of Education for Community Unit School District 187, Cahokia, Illinois et al.*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). A clear showing of irreparable injury may also support an exception. *Renegotiation Board v. Bannercraft Clothing Co., Inc. et al.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). In short only those remedies which provide a real opportunity for adequate relief need be exhausted. *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974).[4]

Examination of the case *sub judice* in light of the exhaustion requirement compels the conclusion that the district court was in error. Without question the Secretary may, if he determines that Major Shealy was acting within the scope of his employment, grant Mrs. Rhodes the relief which she seeks. In attempting to demonstrate both the inadequacy of the prescribed administrative remedy and impending irreparable injury incident to the pursuit of the administrative process, Mrs. Rhodes pessimistically assumes an adverse ruling by the Secretary. His determination, she contends, will be final and conclusive and may well bar any judicial review under 32 U.S.C. § 715(g). We have as much difficulty as did the district court in understanding the apparently incorrect ruling of the claims division, but there is no indication at this point that the Secretary will rule similarly. We are unwilling to usurp the Secretary's power to make a correct determination of the issue. Neither are we able to embrace the contention that because of section 715(g) the district court's jurisdiction, if any, is greater prior to the Secretary's ruling than subsequent thereto. Whether the controversy between Mrs. Rhodes and

---

**3.** See *e. g.: Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974); *Denton v. Secretary of the Air Force*, 483 F.2d 21 (9th Cir. 1973); *United States ex rel. Sledjeski v. Commanding Officer, Armed Forces*, 478 F.2d 1147 (2d Cir. 1973); *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971); *Feliciano v. Laird*, 426 F.2d 424 (2d Cir. 1970); *Van Bourg v. Nitze*, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967).

**4.** We deal only with those exceptions which have potential application to the case before the court. Undertaking to enumerate a complete list presents a more difficult challenge because of a lack of consistency among reported cases. See generally 3 *Davis, Administrative Law*, Ch. 20, p. 446ff. Happily the exceptions with which we must deal are well defined and established.

the army is viewed as turning on a factual or a legal question, the army ought to be the primary authority for the interpretation of its own regulations. A decision by the Secretary that Major Shealy was within the scope of his employment would end the matter without judicial intervention. If on the other hand the Secretary affirms the holding of the General Claims Division and Mrs. Rhodes seeks judicial review, the courts at that time will be squarely faced with the question of the reviewability of the Secretary's decision.

Judge Goldberg, writing for this court in *Hodges v. Callaway, supra,* envisioned the present problem and faced it squarely:

> Exhaustion is required in part because of the possibility that administrative review might obviate the need for judicial review. That the administrative process might not have this effect is not usually a reason for bypassing it.

Finding no available exception, we must enforce the requirement that Mrs. Rhodes exhaust her administrative remedies. Simply, our holding is only that Mrs. Rhodes entered the federal courthouse prematurely and the district court should have dismissed her complaint. Its judgment in her favor must therefore be reversed and the cause remanded with directions that such complaint now be dismissed.

REVERSED and REMANDED.