628 F.2d 474
 24 Fair Empl.Prac.Cas. 98, 24 Empl. Prac.
Dec. P 31,318
NATIONAL BANK OF COMMERCE OF SAN ANTONIO, Plaintiff-Appellee,
v.
F. Ray MARSHALL, Secretary of Labor, and G. William Miller,
Secretary of the Treasury, Defendants-Appellants.
 No. 77-3060.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 22, 1980.
 
 Jamie C. Boyd, U.S. Atty., San Antonio, Tex., John C. Hammock, Vincent F. O'Rourke, Jr., Atty., Walter W. Barnett, Drew S. Days, III, Asst. Atty. Gen., Civil Rights, App. Sec., Dept. of Justice, Washington, D.C., for defendants-appellants.
 Terry S. Bickerton, J. Burleson Smith, San Antonio, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before WISDOM, TJOFLAT and REAVLEY, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 Plaintiff, a federal contractor, brought a declaratory judgment action challenging certain Labor Department regulations which might require it to adopt an affirmative action program. At the time plaintiff filed the action, an administrative review of plaintiff's compliance with the regulations was proceeding. The district court, invoking the exhaustion of administrative remedies doctrine, decided to let the administrative process run its full course before considering the merits of plaintiff's case. The court did, however, retain jurisdiction over the action and enjoined the Labor Department from actual imposition of sanctions pending a full judicial airing of the merits. The Government appeals from this order.
 
 
 2
 The sole question we must decide is whether the district court, having concluded that plaintiff should exhaust its administrative remedies, erred in retaining jurisdiction. Finding nothing in the record that suggests that the plaintiff would suffer irreparable harm if the case were dismissed, we vacate the order and dismiss without prejudice to plaintiff's right to seek judicial relief at the appropriate juncture.
 
 
 3
 * The plaintiff in this case is the National Bank of Commerce of San Antonio (the "Bank"). To obtain certain contracts with the Department of Treasury, the Bank was required under Executive Order 11246 to agree to a policy of nondiscrimination in employment and to comply with implementing regulations promulgated by the Labor Department.[1] Under these regulations, federal contractors, including the Bank, are required to analyze the representation of women and racial and ethnic minorities among their employees and, if the analysis reveals "underutilization" of a particular group, to develop an affirmative action program that ordinarily would include numerical goals and timetables by which the contractor's progress can be gauged. A key feature of the regulations is that a contractor may be required to adopt an affirmative action program regardless of whether it is accused of discrimination actionable under such federal laws as Title VII, 42 U.S.C. §§ 2000e-2000e-16 (1976), and 42 U.S.C. § 1981 (1976).
 
 
 4
 The Department of the Treasury, the governmental body contracting with the Bank, was charged with initial responsibility for monitoring the Bank's compliance with the executive order and regulations. As part of a routine review, the Department determined that the Bank had not engaged in the required analysis of its employees. Without benefit of such analysis, the Department could not evaluate the adequacy of the Bank's affirmative action program, which was nothing more than a general policy statement against job discrimination. Thus, the Department found the Bank to be out of compliance with the executive order and, in accordance with the regulations, issued a notice giving the Bank thirty days to show cause why formal enforcement proceedings should not be commenced against it.
 
 
 5
 The purpose of this thirty-day period is to enable the parties to attempt to effect an informal resolution of the dispute. It is only if such a resolution cannot be reached that the matter is referred to the Office of Federal Contract Compliance ("OFCC") for issuance of a formal administrative complaint. The contractor, upon receipt of the complaint, has twenty days to request a hearing before an administrative law judge, who, following the hearing, can propose the imposition of sanctions, including cancellation of all existing federal contracts. The administrative law judge's decision does not, however, become final unless and until approved by the OFCC Director.
 
 
 6
 The Bank, shortly after receiving the thirty-day show cause notice, brought this action in federal district court to have the executive order declared invalid insofar as it would require the Bank to adopt an affirmative action program with goals and timetables. Basically, the Bank's position was that it had never discriminated, and thus its adoption of an affirmative action program with goals and timetables would violate Title VII and 42 U.S.C. § 1983 (Supp.1978). Since an executive order cannot countermand lawfully enacted statutes, the regulations were, according to the Bank, invalid. Moreover, the Bank argued that if it chose to honor the order and ignore the statutes, it would be liable in damages to its white male employees. In short, the Bank considered itself faced with a Hobson's choice.
 
 
 7
 In response to the Bank's complaint, the government moved for dismissal of the action on the ground that the Bank had not exhausted its administrative remedies. The Bank advanced two arguments against the government's motion. First, it was challenging the facial validity of the regulations, whose enactment was final agency action currently ripe for review under Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Second, exhaustion of administrative remedies was not appropriate in any event because (1) application of the exhaustion doctrine would cause the Bank great harm, while relaxation would cause the government only mild inconvenience, and (2) the issue of the regulation's lawfulness would neither be disposed of nor crystallized by the administrative process. See Ecology Center of Louisiana, Inc. v. Coleman, 515 F.2d 860, 866 (5th Cir.1975).
 
 
 8
 Meanwhile, the thirty-day show cause period had run, and the Department of the Treasury referred the matter to the OFCC, which issued a formal administrative complaint. A press release accompanying the complaint indicated that the proceedings might result in the Bank's loss of all federal funds deposited with it. The Bank responded to the complaint and press release by moving the district court to enjoin the enforcement proceedings. Their continuance, the Bank argued, would cause it to suffer irreparable injury, especially in connection with allegedly damaging and misleading disclosures made in the press release.
 
 
 9
 The district court dealt with the motions before it in a series of orders. In its first order, entered on March 1, 1977, the court denied the Bank's motion for injunctive relief, and the government's motion to dismiss. Both parties petitioned for reconsideration, and on June 18, 1977, the court issued a new order that granted plaintiff's motion for a preliminary injunction against continuation of the OFCC proceedings. On August 10, 1977, however, the court reversed itself and, sua sponte, modified its injunction to allow the administrative process to proceed but to bar the imposition of any resulting sanctions until a full judicial hearing was held on the merits. The court explained that it wanted the administrative process to continue because "the evidence, legal arguments and agency position reasonably expected to be developed through participation of the parties in the administrative procedures will no doubt be of material benefit to the court in arriving at a correct final decision." Record at 317.
 
 
 10
 It is from the last order that the government appeals.
 
 II
 
 11
 The government contends that the issue on this appeal is simple and straightforward: whether the district court, having concluded that the administrative process should proceed prior to judicial consideration of the case on the merits, erred in issuing a preliminary injunction and otherwise retaining jurisdiction. The Bank counters the government's position with the two arguments it raised below: that its challenge is to the validity of the regulations, which are themselves final agency action ripe for review under Abbott Laboratories, and, in any event, that several exceptions to the exhaustion doctrine are applicable to the facts of the case. In addition, the Bank argues that even if the exhaustion doctrine does apply, the district court did not abuse its discretion in issuing the injunction to prevent the Bank from suffering irreparable injury.
 
 
 12
 For reasons we will describe more fully below, we think the Bank's first two arguments are foreclosed by its failure to cross-appeal the district court's denial of preadministrative judicial review of the merits. As to the Bank's final argument, while we agree that a district court may sometimes stay its hand, but nevertheless exercise its jurisdiction to spare a plaintiff irreparable harm, we fail to see how dismissal of this action would have caused the Bank any cognizable injury.
 
 
 13
 * Preadministrative Judicial Review
 
 
 14
 We think the district court's order, properly construed, must be read to hold preadministrative judicial consideration of the merits of the Bank's claim improper. Since the Bank did not cross-appeal the district court's order, we must accept the court's deferral of consideration of the Bank's claims as correct. Thus, the Bank's theories about preadministrative review of agency regulations and various exceptions to the exhaustion doctrine are relevant to this appeal only if they can be used to justify a court's simultaneous deferral of consideration and retention of jurisdiction of a case during the pendency of administrative proceedings.[2] We think that they cannot.
 
 
 15
 To begin, the doctrine of exhaustion, with its panoply of exceptions, is by definition concerned with the timing of judicial resolution of a case on the merits, and not with the circumstances under which a court should accept jurisdiction but then allow a case to lie fallow on the docket while administrative proceedings are continuing. We think it equally clear that the principles of ripeness allowing judicial review of agency regulations outside the context of administrative enforcement proceedings are irrelevant to whether a court should allow its jurisdiction to be invoked when it views agency enforcement proceedings as a prerequisite to consideration of the case on the merits. But since the Bank places such great reliance on Abbott Laboratories, we will discuss further why the ripeness doctrine articulated therein fails to support the district court's actions here.
 
 
 16
 The primary purpose in finding a regulatory challenge ripe for review prior to administrative enforcement is to spare the plaintiff the irreparable injury it might suffer if judicial consideration were deferred until after enforcement proceedings have been allowed to run their full course. As the Bank notes, Abbott Laboratories is the leading case on when challenges to finally promulgated agency regulations are ripe for judicial review.
 
 
 17
 In Abbott Laboratories, plaintiffs challenged FDA regulations that would have required pharmaceutical advertising to include the generic names of brand-name drugs. The government argued that the validity of these regulations would be ripe for review only in the context of actual enforcement proceedings. The Supreme Court, however, held that pre-enforcement judicial review of agency regulations was appropriate if the issues raised were fit for review and if the plaintiff would suffer hardship were review withheld. The Court found such hardship in the choice faced by the plaintiffs: incurring the substantial expense of compliance with the regulations or risking criminal and civil penalties if, after completion of enforcement proceedings, the regulations were judicially upheld. The only solution to the dilemma was to have the regulations' validity judicially affirmed or denied prior to enforcement proceedings. Thus, it is the timing of a court's consideration of the merits and not the bare exercise of jurisdiction that is critical.
 
 
 18
 In the case before us, the district court decided to defer its consideration but retain jurisdiction during the ongoing administrative process. We think it plain that the district court's action cannot prevent the hardships that Abbott Laboratories was intended to ease. If the challenged regulatory requirement is valid, the district court's decision so holding will come too late to relieve the Bank of the dilemma of choosing between the expense of compliance and the risks of noncompliance. Hence, we do not think the concept of pre-enforcement review of agency regulations, as articulated in Abbott Laboratories, can be used to justify the district court's decision to retain jurisdiction of a case that it would not decide until the conclusion of administrative proceedings.[3]
 
 B
 Irreparable Injury
 
 19
 The Bank's last argument is that if Abbott Laboratories is inapplicable to its case, and if no exception to the exhaustion doctrine is applicable, the district court nevertheless was entitled to retain jurisdiction in order to enjoin the imposition of sanctions and spare the plaintiff irreparable injury. See, e. g., Natural Resources Defense Council, Inc. v. Train, 510 F.2d 692, 703 n.59 (D.C.Cir.1975).
 
 
 20
 The issue whether a court must dismiss an action when it stays its hand pending administrative consideration has not been addressed by this circuit. The general rule is that where the plaintiff "enter(s) the federal courthouse prematurely . . . the district court should (dismiss)." Rhodes v. United States, 574 F.2d 1179, 1182 (5th Cir.1978). On consideration, we think an exception to this rule should be made when the exercise of jurisdiction and the granting of preliminary relief will prevent irreparable injury to the plaintiff. If the court's actions will not, however, prevent such injury, we think a court must dismiss the action to avoid unnecessarily entangling itself in ongoing administrative proceedings.
 
 
 21
 The court's retention of jurisdiction in this case, then, would be proper only if dismissal of the action would cause the plaintiff to suffer irreparable injury. The Bank contends that this requirement is satisfied because misleading information in the OFCC press release damaged its credibility with its customers. Without considering whether such damage would constitute a cognizable injury, we are unable to share the Bank's view that the district court's injunction (and retention of jurisdiction) can somehow eradicate an injury that the Bank alleges it has already suffered. If the Bank's position is that the OFCC's unwarranted actions require an after-the-fact reprimand by injunctive order, we are unable to agree.
 
 
 22
 In summation, the injunction in this case prevents no future injury to the Bank, serves no apparent useful purpose, and at least minimally interferes with the administrative process the district court felt should continue. Thus, it should be dissolved and jurisdiction should be relinquished. If sanctions against the Bank are ultimately determined to be necessary, the Bank can seek appropriate relief at that time, including a preliminary injunction against the imposition of sanctions.[4] Accordingly, the district court's order is VACATED.
 
 
 
 [1]
 Executive Order No. 11246, 3 C.F.R. 12319 (1965), as amended by Exec. Order Nos. 11375, 32 Fed.Reg. 14303 (1967), and 11478, 34 Fed.Reg. 12985 (1969), requires that governmental contracts, except those exempted by regulation, include the following language:
 "During the performance of this contract, the contractor agrees as follows:
 "(1) The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.
 "(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.
 "(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.
 "(4) The contractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.
 "(5) The contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.
 "(6) In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.
 "(7) The contractor will include the provisions of Paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of Sept. 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, That in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States."
 
 
 [2]
 The Bank seems to regard preenforcement review of agency regulations as an exception to the exhaustion doctrine. The concept of such preenforcement review is, however, concerned with whether and when a challenge to the facial validity of regulations is ripe, and is independent of the exhaustion doctrine. Exhaustion deals with whether a court should resolve the validity of a particular agency action directed against a particular party before administrative proceedings have been concluded. It is difficult to tell from the complaint whether the Bank regards its case as a challenge to the facial validity of regulations or as a challenge to the regulations as the OFCC will apply them to the Bank, or some combination of the two
 
 
 [3]
 We think it warrants mention that in the only case in which a federal contractor did appeal a court's dismissal of a challenge to Executive Order No. 11246's affirmative action requirements pending completion of administrative hearings, the Tenth Circuit rejected the substantive arguments the Bank advances in this case. St. Regis Paper Co. v. Marshall, 591 F.2d 612 (10th Cir.), cert. denied, 444 U.S. 828, 100 S.Ct. 55, 62 L.Ed.2d 36 (1979)
 
 
 [4]
 One of the prerequisites for a preliminary injunction is a judicial determination that there is a substantial likelihood plaintiff will prevail on the merits. Buchanan v. U.S. Postal Service, 508 F.2d 259, 266 (5th Cir.1977). Under our decision in Weber v. Kaiser Aluminum & Chemical Corp., 563 F.2d 216 (5th Cir.1977), reversed sub nom. United Steelworkers of America v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), which was the law in this circuit at the time the Bank filed its complaint, there may have been a substantial likelihood that plaintiff ultimately would prevail. In light of the Supreme Court's reversal of Weber, however, it may no longer be true that plaintiff is likely to prevail on the merits, at least concerning its challenge to the facial validity of the government's regulations. Thus, it may be that even if the Bank would have suffered an injury that a preliminary injunction could prevent, issuance of the injunction nevertheless would have been improper