STEERE TANK LINES, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.

No. 81–4157.

United States Court of Appeals,
Fifth Circuit.

May 14, 1982.

Hugh T. Matthews, Barry J. Brooks, Dallas, Tex., for petitioner.

Robert J. Grady, I.C.C., Susan J. Atkinson, Robert B. Nicholson, U. S. Dept. of Justice, Washington, D.C., for respondents.

T. M. Brown, David A. Cherry, Edmond, Okl., for intervenor United Petroleum Transports, Inc.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

This case brings before the court the interrelated concepts of finality and exhaustion of remedies in the context of a petition to review an order of the Interstate Commerce Commission. The petitioner, a protestant in the proceedings before the ICC, filed its petition to review subsequent to an unfavorable decision of an employee board of the ICC without first obtaining administrative review by the Commission. We hold that the decision of the employee board became a final decision of the Interstate Commerce Commission subject to review in this court. We further hold that the petitioner's failure to exhaust its remedies, by forgoing an administrative appeal of the employee board's decision, precludes us from considering the merits of the petition. Accordingly, we dismiss.

## I

United Petroleum Transport, Inc. ("UPT"), a motor common carrier based in Oklahoma, filed an application with the Interstate Commerce Commission for a certificate of public convenience and necessity to transport petroleum, petroleum products, and acids and chemicals over irregular routes between points in ten western and southwestern states. UPT's application was opposed by the petitioner, Steere Tank Lines, Inc. ("Steere"), and two other motor carriers, each of whom appeared as a protestant. As it may do, the Commission referred UPT's application to an employee board for an initial decision.[1]

The employee board found that UPT was "fit, willing, and able" to perform the service described in its application and that "[a]n appropriate certificate should be granted." This decision was "served"[2] by

---

1. The Interstate Commerce Commission is authorized to establish employee boards—panels of at least three employees. *See* 49 U.S.C. § 10304. The Commission may delegate to an employee board "a matter before the Commission for action." *Id.* § 10305(a). When considering matters referred to it, a "board . . . has the same power and authority and is subject to the same duties and obligations as the Commission." *Id.* § 10305(c). Action taken by an employee board handling matters delegated to it by the Commission "has the same force and is taken in the same manner as if taken by the Commission." *Id.* Absent an administrative appeal by one of the parties, or other administrative action by the Commission, a decision of an employee board in a motor carrier case "becomes a final decision on the 20th day after it is served on the interested parties." *Id.* § 10322(e).

2. The Commission may serve a motor carrier either personally or by mail. *Id.* § 10329(c)(2). When service is made by mail "the date of mailing is considered to be the time when notice is served." *Id.* Thus, delays in the move-

the Commission's Secretary on March 9, 1981, but first came to Steere's attention on March 25, 1981, when, while reviewing a list of ICC releases, Steere's counsel noticed that an employee board decision on UPT's application had been served some 2 weeks earlier. Counsel for Steere immediately requested a copy of the employee board's decision and, after receiving a copy of the decision of the employee board on March 31, requested by telegram an extension of the period of time in which to file an administrative appeal. Although the Interstate Commerce Act allows only 20 days from the date of service in which to file an administrative appeal, see 49 U.S.C. § 10322(e), and, in the usual course, the decision of the employee board would have become the final decision of the ICC on March 29, see id.,[3] the Commission granted the petitioner an additional 20 days in which to file.[4] Counsel for Steere was notified of the extension by a telephone call from the ICC on April 2, 1981.

On April 8, 1981, prior to receiving an official notice from the Secretary of the ICC advising all parties that the time for filing appeals had been extended until April 20, 1981, Steere's counsel received a copy of a certificate of public convenience and necessity prematurely issued to UPT authorizing the motor carrier service granted by the employee board. Counsel for Steere received a copy of the notice extending the time to file an administrative appeal on April 23, 1981. But, despite the earlier telephone call advising that the Commission had granted an additional 20 days in which to appeal, no administrative appeal was filed.

On May 4, 1981, Steere brought this action under the Hobbs Act, 28 U.S.C. § 2341 et seq., to review the order of the Interstate Commerce Commission granting UPT's application.

## II

At the outset, there is the question of our jurisdiction. The respondents, the United States and the Interstate Commerce Commission, contend that because Steere has not "appealed through the entire administrative process" to obtain a decision by the Commission on UPT's application after an administrative appeal, there is no "final order" for us to review and, consequently, we must dismiss Steere's petition for lack of jurisdiction. We believe, however, that the respondents mistakenly have confused finality, the linchpin undergirding our jurisdiction, with exhaustion, the prudential consideration[5] requiring a party to a proceeding before an agency to complete the administrative process prior to seeking judicial review. Although there is considerable overlap between these concepts, they are separate and distinct. K. Davis, Administrative Law Treatise § 20.20, at 297 (Supp. 1982).

As the respondents point out, our jurisdiction in this case is dependent on the existence of a final order of the Interstate Commerce Commission. This is the clear command of an unambiguous jurisdictional statute. "The court of appeals has exclusive jurisdiction . . . to determine the validity of . . . final orders of the Interstate Commerce Commission. . . ." 28 U.S.C. § 2342. If an order of the ICC is not final,

---

ment of the mails may cause a lag between when a document is served by the ICC and when the motor carrier receives actual notice from the Commission. As will be seen in this case, because the Commission marks various periods of limitations from the date of service, e.g., id. § 10322(e), a delay in the mails has the potential for a serious disruption in the orderly processing of the Commission's business.

**3.** See note 1 supra.

**4.** The Interstate Commerce Act authorizes the Commission to extend the time in which to file

an administrative appeal for "an additional period of not more than 20 days." 49 U.S.C. § 10322(e).

**5.** We refer to exhaustion of remedies as a "prudential consideration" because, unlike finality, a consideration governing whether we may exercise jurisdiction, exhaustion is "concerned with the timing of judicial resolution of a case on the merits." National Bank of Commerce v. Marshall, 628 F.2d 474 (5th Cir. 1980). See also note 7 infra.

it is not reviewable in the court of appeals. *Union National Bank v. ICC*, 569 F.2d 742, 745 (3d Cir. 1977).

■ The order that Steere asks us to review is a final order of the Interstate Commerce Commission. The order was not the product of the deliberations of the members of the Commission; nonetheless, Congress has empowered the Commission to delegate its decision-making responsibilities to an employee board,[6] and it also has set up a mechanism through which decisions of an employee board may become final without the further intervention of the Commission. *See* 49 U.S.C. § 10322(a), (e); *see also* 49 C.F.R. § 1100.98(b)(7) (1980). As Congress has written, "Action taken [by an employee board] has the same force and is taken in the same manner as if taken by the Commission." 49 U.S.C. § 10305(c). Under these circumstances, we have little difficulty in holding that the decision of the employee board, having been transformed into a decision of the Commission by Steere's failure to file an administrative appeal within the allotted time, *see id.* § 10322(e); *accord,* 49 C.F.R. § 1100.-98(b)(7) (1980), is a final order of the Interstate Commerce Commission subject to judicial review. *Cf. New England Coalition on Nuclear Pollution v. NRC*, 582 F.2d 87, 99 (1st Cir. 1978) (the court of appeals may review a final decision of the NRC's appeal board without an intervening administrative appeal to the NRC; "[a]n appeal to superior agency authority is not a prerequisite to reviewability absent an agency rule requiring an appeal before the agency action becomes final").

### III

■ Although the decision of the ICC is final and subject to our review, Steere's failure to complete the administrative process precludes us from reaching the merits of this dispute.

6. *See* note 1 *supra*.

7. There are many exceptions to the requirement that a party exhaust its administrative

As a general rule, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Exhaustion of administrative remedies is required so that the administrative process is not interrupted prematurely; exhaustion allows the administrative agency to use its discretion, apply its expertise, correct its own errors, and handle its business expeditiously. *E.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1370 (5th Cir. 1980).

### A

■ As an initial matter, we believe that the administrative scheme devised by Congress, and used by the ICC in this case, clearly requires a party to take an administrative appeal from an employee board's decision in order to exhaust administrative remedies. The statute itself refers to the decision of the employee board as an "initial decision," *see* 49 U.S.C. § 10322(b)(1), and specifies an administrative procedure through which a party may obtain administrative review by the Commission, *see id.* § 10322(e); *see also* 49 C.F.R. § 1100.-98(b)(1) (1980). Moreover, the Commission's rules of practice caution that "a party must exhaust its administrative remedies before going to court" and, in the next sentence, instruct that "[a]ny action appealable as of right must be timely appealed." *Id.* § 1100.98(f) (1980). Without more, then, Steere failed to exhaust its administrative remedies by neglecting to take an administrative appeal prior to filing its petition for review in this court.

### B

■ Although there are many exceptions to the strict application of exhaustion of administrative remedies,[7] we are not per-

remedies prior to seeking judicial review. For example, exhaustion often is excused "when the prescribed administrative remedy is plainly inadequate because either no remedy is availa-

suaded that, under the facts of this case, the petitioner should be excused from its failure to exhaust. Steere argues that its untimely notification of the employee board's decision, in combination with the premature issuance of UPT's certificate of public convenience and necessity and the subsequent untimely receipt of the notice extending the time in which to file an administrative appeal, excuses it from seeking administrative review before the Commission. We find this argument unconvincing.

It is true that the petitioner was handicapped in deciding whether and when to file an administrative appeal by its delayed receipt of the decision of the employee board. Nonetheless, counsel for the petitioner—an experienced practitioner before the ICC—knew that the employee board had reached a decision on UPT's application several days prior to the expiration of the time within which Steere was required to file an administrative appeal. We do not think it too much to ask that when a mishap in the administrative process occurs counsel make every effort to work with the agency so that the administrative process is not subverted. In the instant case, counsel should have contacted the Secretary of the ICC, ascertained whether UPT's application had been granted by the employee board, and, if necessary, sought an immediate and timely extension in which to file an administrative appeal. This was not done.

■ Nor are we persuaded by the petitioner's argument that because 20 days had elapsed between service of the decision of the employee board and receipt of the employee board's decision by Steere, the deci-

sion of the employee board was then "final,"[8] see 49 U.S.C. § 10322(e), and any efforts by Steere to obtain an extension of time in which to appeal would have been unavailing. The Interstate Commerce Act provides that the "Commission may ... because of material error ... grant rehearing, reargument, or reconsideration of an action of the Commission," id. § 10322(g), and we think that this provision furnishes the Commission with ample authority to provide for an out of time administrative appeal. See also id. § 10322(i).

We also reject any claim that Steere should be allowed to sidestep the administrative process because the written notice from the Secretary of the Commission extending the time in which to appeal was not received until the new deadline had passed. Steere earlier had been advised by a telephone call from the ICC that the Commission had granted an extension of time in which to file an administrative appeal. We sympathize with the petitioner concerning the confusion that must have attended the subsequent receipt of a copy of a certificate of public convenience and necessity issued to UPT, but we see no reason why the petitioner's counsel could not have picked up the telephone and called the Secretary of the Commission to inquire whether the certificate had been issued by mistake and if an administrative appeal still could be processed. Instead of pursuing this course and making any inquiry whether the Commission mistakenly had issued the certificate—a course of action suggested on the certificate itself[9]—counsel for the petitioner waited. In these circumstances, we are loathe to find exhaustion.

ble, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury." *Patsy v. Florida International University*, 634 F.2d 900, 903 (5th Cir. 1981) (en banc), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). Exhaustion also is not required when a party seeks to overturn a legislative act and administration action will leave standing the constitutional question, or when the question of the adequacy of the administrative remedy is for all practical purposes co-extensive with the merits of the plaintiff's claim, or when it is clear that compliance with the administrative

procedures would be futile. *Patsy*, 634 F.2d at 903–04. As will be seen, we are unconvinced that the facts in the instant case justify a relaxation of the requirement that the petitioner exhaust his administrative remedies.

8. *See* note 1 *supra*.

9. The certificate of public convenience and necessity issued to UPT contained the following language prominently displayed:

"Note: If there are any discrepancies regarding this document please notify the Commission within 30 days."

In sum, we believe the procedural history of this case is an example of a situation in which the administrative remedy was forgone—and done so without good reason. Steere did not exhaust its administrative remedies.

#### IV

The decision of the employee board in this case is a final order of the Interstate Commerce Commission subject to review in the court of appeals. However, the petitioner's failure to exhaust available remedies by taking an administrative appeal requires that the petition for review be, and it is,

DISMISSED.