The SWEET LIFE, Plaintiff–Appellant,

v.

Elizabeth DOLE, Secretary of Labor, et al., Defendants–Appellees.

No. 88–2840.

United States Court of Appeals,
Fifth Circuit.

June 28, 1989.

Bruce A. Coane, Houston, Tex., for plaintiff-appellant.

Vincent C. Costantino, U.S. Dept. of Labor, Washington, D.C., William Yahner, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for defendants-appellees.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

The Sweet Life, a furniture manufacturer and retailer, appeals from the district court's decisional composition in this case, contending that the judgment below is marred by sour notes. We decline the appellant's request to rescore the district court's work. Because we detect certain prudential cacophonies in the court's composition, however, we vacate the judgment and remand for an appropriately melodic resolution of this dispute.[1]

1. While one should not construe our words to hold that dissonance is an undesirable quality in

Part I of our opinion rehearses the facts and procedural background. In Part II, we first explicate the somewhat complex administrative scheme controlling our inquiry. We then proceed to a resolution of this piece, holding that The Sweet Life has failed to exhaust its administrative remedies.

## I.

On April 22, 1987, The Sweet Life ("Employer" or "The Sweet Life"), pursuant to 20 C.F.R. §§ 621.1–3 (1988), filed applications with appellee, the Department of Labor ("DOL"), for two temporary employment certifications on behalf of two nonimmigrant aliens.[2] In its application, The Sweet Life maintained that it required temporary furniture makers for two reasons: first, because an expected increase in sales due to an advertising campaign required additional labor; and second, because the Employer desired to build up a surplus stock of furniture.

According to the Employer, the labor need was temporary because the Employer did not intend to continue its stepped-up advertising, and because there would be no more need for additional furniture makers after the buildup of the surplus stock. As part of its application, the Employer submitted documents, in accordance with DOL guidelines promulgated at 49 Fed.Reg. 25837 (June 25, 1984) ("GAL 10–84"), "showing the attempts of [the Employer] to hire U.S. workers and stating that no qualified workers were available, and ...

showing the terms and conditions of employment." Brief for Employer at 3.

DOL denied temporary labor certifications for both nonimmigrant aliens on June 15, 1987. (R. 28–29). The identical, preprinted denial forms state that

"The Department of Labor has made a determination on your temporary application for alien employment certification pursuant to Title 20, Code of Federal Regulations, Part 621. Final action has been taken as follows: ... A certification cannot be issued as required by Immigration and Naturalization Service regulations at 8 CFR 214.2(h)(3)(i) on the basis of information available for the following reasons...."

In a typewritten paragraph following the main preprinted portion of the form, the DOL stated its reasons for the denials of certification:

"The work as described is seasonal but not temporary in nature. In normal operations there would be a continuing need for the work after 4/88. You have not adequately documented that a need for the workers will end at that time. Therefore, certification cannot be granted. You may submit a new application at any time, in which case you should keep in mind the deficiency in the present application. As an alternative, you may appeal this determination to the Immigration and Naturalization Service."[3]

The Employer filed this action in the Southern District of Texas on August 10, 1987. The Employer seeks judgments that

---

musical composition, we recognize that Mozartian mellifluousness comports particularly well with the formal demands of judicial decision-making.

2. The phrase "nonimmigrant alien" is negatively defined in 8 U.S.C. § 1101(a)(15). *See* Part II(A) *infra.*

3. The preprinted portion of the DOL form, which we quote in part in the text, refers to 8 CFR § 214.2(h)(3)(i) (1988). Section 214.-2(h)(3)(i) concerns "petition[s] for alien[s] to perform *agricultural* labor or services of a temporary or seasonal nature" (emphasis added). In contrast, 8 CFR § 214.2(h)(4)(i) (1988), the applicable regulation in this case, concerns *non-agricultural* workers. As we quote in the text,

the typewritten portion of the DOL denial form refers to the "seasonal but not temporary" nature of the work as the reason for the DOL's denial of the certifications. Because of our disposition today, we express no view concerning the seasonal nature of the furniture business.

The applicable regulations have been the subject of some recodification in recent years. They did not exist in their precise present form at the time DOL issued its certification denial in this case, which may have some bearing on any possible confusion existing below concerning the regulations. *See* note 7 *infra* and accompanying text.

DOL exceeded the scope of its authority, 5 U.S.C. § 706(2)(C), and acted arbitrarily and capriciously, 5 U.S.C. § 706(2)(A), by denying the labor certifications on the ground that the Employer failed to prove that the need for labor was temporary in nature. In addition, the Employer seeks an order compelling issuance of the certifications. See *28 U.S.C. § 1361*.

According to The Sweet Life, DOL is empowered only to make determinations of market conditions—that qualified workers are not available to perform the labor in question, and that the employment of aliens will not adversely affect the wages and working conditions of similarly employed workers in the United States. *Cf.* 8 U.S.C. §§ 1182(a)(14) & 1188. Determining whether a need for particular work is temporary in nature, according to the Employer, is reserved for the Immigration and Naturalization Service ("INS").[4] The Employer contends that DOL usurps power reserved for INS by denying certifications at the threshold based on an evidentiary determination concerning the particular work involved, thereby avoiding an analysis of market conditions.

The parties filed cross-motions for summary judgment. DOL contended both that the decision was not ripe for review and that the Employer had failed to exhaust its administrative remedies because the Employer failed to appeal the DOL certification decision to the INS. The parties disputed whether DOL's denial of the applications was arbitrary and capricious, 5 U.S.C. § 706(2)(A), and whether DOL exceeded the scope of its authority. 5 U.S.C. § 706(2)(C).

The district court rejected DOL's ripeness and exhaustion arguments, stating that

"[in the DOL's] denials of the applications for the two workers, the DOL advised Plaintiff of its ability to refile, supplying additional documentation, or appeal to the INS. Plaintiff chose not to refile, but applied to the INS on behalf of [only one alien], not on behalf of [the other alien].... The court concludes that [the Employer] should not be required to further exhaust administrative remedies. Assuming [the Employer] feels it has provided all the documentation it can, a refiling with the DOL would be futile. Likewise, since [INS appeals for the two aliens would be identical, a second] appeal to the INS for the second alien would be futile.... *Honig v. Doe* [484 U.S. 305], 108 S.Ct. [502] 598, 606 [98 L.Ed.2d 686] (1988)." [5]

Thus determining full resolution of the dispute appropriate, the district court rejected the Employer's claims that DOL had exceeded the scope of its authority and had acted arbitrarily and capriciously. First, the district court held that DOL had not exceeded its authority. The district court relied on and quoted DOL's own internal guidelines, which do not have the force of law:[6] "Because the availability test of U.S. workers in a given occupation can vary considerably depending upon whether a job is permanent or temporary, the Department of Labor *must consider* whether in its judgment the job offered to an alien is, in fact, temporary or not. 49 Fed.Reg. 25837 (June 25, 1984) [emphasis in district

---

**4.** The INS has determined that the "test for whether a job is temporary as opposed to permanent is 'the nature of the *need* for the duties to be performed' [rather than the nature of the *position* and its performance]." *Wilson v. Smith,* 587 F.Supp. 470, 472 (D.D.C.1984) (quoting *Matter of Artee Corporation,* INS Interim Decision #2934 (November 24, 1982) (emphasis in district court's opinion)). The INS has issued a proposed rule which would clarify at 8 CFR 214 that the nature of an employer's need, not the nature of the position, is the determinant factor in a temporariness inquiry. *See* 53 Fed. Reg. 43217 (October 26, 1988) (available on LEXIS, Genfed Library, Allreg File); *see also* note 7 *infra.*

**5.** We do not pass on the merits of the district court's reasoning concerning futility because documentary indications of an appeal to INS from the DOL denial of certification, and the INS' determination, do not appear in the record. Because the content of the INS ruling is meaningful, we analyze this case as if no appeal to the INS has occurred. *See* Part II(B)(2) *infra.*

**6.** DOL concedes that the guidelines, which were not promulgated pursuant to a notice and comment procedure, do not have the force of law. Brief for DOL at 22. The guidelines are simply a "rule-related notice." 49 Fed.Reg. 25837 (June 25, 1984).

court's opinion]." The court added that "DOL's denial ... was thus clearly not contrary to law. The DOL *did not reach* the issues of the availability of United States workers or the effect on the United States work force because it determined that [the Employer] had not met the *threshold requirement* of documenting the work as temporary" (emphasis added). Second, the court held that DOL's denial was not arbitrary and capricious, stating that the Employer's contentions were "in fact more consistent with the creation of new permanent positions than temporary ones."

## II.

The district court erred in reaching the scope of authority and evidentiary issues. On the record before us, it is apparent that the Employer has failed to exhaust its administrative remedies. We could not fully determine the propriety of DOL's actions in any event today. DOL relies in its actions on authority vested in the Immigration and Naturalization Service, and INS is not a party to this case.

We first explicate the regulatory framework below. With the schematics of the administrative plan in mind, we orchestrate our finale.

A. *Administrative Framework.*

The statutory and regulatory scheme allocating agency decisionmaking authority in this area displays a rather baroque cast. Delegation of decisionmaking power emanates from the baton of Congress and extends to the supporting roles of the administrative players, DOL and INS.

Statutory authority, which is not challenged by the Employer, conducts the players' executions of their parts. Under 8 U.S.C. § 1101(a)(15), "The term 'immigrant' means every alien except ... an alien having a residence in a foreign country which he has no intention of abandoning ... who is coming temporarily to the United States ... to perform ... temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country...." Under 8 U.S.C.

§ 1184 (entitled "Admission of Nonimmigrants"), "The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe...." 8 U.S.C. § 1184(a). "The question of importing any alien as a nonimmigrant under section 1101(a)(15)(H) ... shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer." 8 U.S.C. § 1184(c).

Pursuant to the statute, the Attorney General has chosen to play a kind of second fiddle—or perhaps more appropriate, a kind of double bass—by promulgating regulations that lie at the bottom of the administrative framework in this case. The Employer does not challenge these regulations. "The Attorney General has delegated to the [INS] Commissioner ... authority to administer and enforce the Immigration and Nationality Act ... as prescribed and limited by 28 CFR § 0.105 et seq." 8 CFR § 100.2(a) (1988). 28 CFR § 0.105 (1988) provides that the INS Commissioner shall exercise the authority conferred upon the Attorney General, including the authority to issue regulations. 28 CFR § 0.108 (1988), entitled "Redelegation of Authority," provides that "The [INS] Commissioner is authorized to confer or impose upon any employee of the United States ... any of the powers, privileges or duties conferred or imposed on the Commissioner by 0.105."

As we note above, INS and DOL play the tune in this context. INS sits in the first chair. The performing relationship of the agencies has its genesis in 8 CFR §§ 214.-2(h)(4)(i) (1988). Entitled "Petition for alien to perform temporary non-agricultural services or labor," the regulation, which is not challenged by The Sweet Life, states that

"Every petitioner must attach to every nonimmigrant visa petition to classify an alien under section 101(a)(15)(H)(ii) of the Act [8 U.S.C. § 1101(a)(15)(H)(ii) ] ... either: (A) A certification from the Secretary of Labor or the Secretary's designated representative stating that quali-

fied persons in the United States are not available and that the employment of the beneficiary will not adversely affect wages and working conditions in the United States similarly employed; or (B) A notice that such certification cannot be made. If there is attached to the petition a notice from the Secretary ... that certification cannot be made, the petitioner shall be permitted to present countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor have been observed. All such evidence submitted will be considered in the adjudication of the petition."

Under current regulations, temporary nonagricultural workers are termed "H-2B" workers. Temporary agricultural workers are termed "H-2A" workers. 8 CFR §§ 214.2(h)(3) & (h)(4); see 8 U.S.C. § 1188, which was enacted in November, 1986 and specifically prescribes procedures for temporary agricultural workers, separating agricultural from nonagricultural workers in the administrative scheme. *See* note 8 *infra.*[7]

DOL, in the tradition of all committed performers, has demonstrated a penchant for improvisation. Citing as authority 8 U.S.C. §§ 1101 and 1184, and the INS regulations at 8 CFR § 214.2, DOL has issued regulations concerning appropriate certification procedures. See 20 CFR §§ 621.1–3 and 655.1 (1988). Section 621.3(a) tracks

the INS regulations at 8 CFR § 214.2(h)(4)(i)(A) concerning qualified worker availability and the effect of alien employment on wages and working conditions in the United States.

The immediate dispute in this case arises from the internal guidelines, GAL 10–84, that DOL composed on June 25, 1984, purporting to explicate 20 CFR §§ 621.1–3. 49 Fed.Reg. 25837 (June 25, 1984). The Employer contends that these guidelines sound notes discordant and disharmonious with superior authority. In other words, argues the Employer, DOL has a tin ear. DOL concedes that the guidelines, which were not promulgated pursuant to a notice and comment procedure, do not have the force of law. Brief for DOL at 22. DOL issued the guidelines as a "rule-related notice." 49 Fed.Reg. 25837. But DOL contends that the guidelines are proper explications of statutory and regulatory authority, thus maintaining that while the guidelines do not soar with Mozartian authority, they accurately invoke the spirit of Amadeus.

Referring to 20 CFR §§ 621, 652 and 655, DOL's guidelines allow the DOL to make a threshold determination that an employer does or does not have a temporary need for particular work. As we discuss above, DOL has acted pursuant to these guidelines in this case, denying the employer's request for labor certification without reaching the questions of adverse effect on wages and qualified worker availability.[8]

---

**7.** Before November, 1986, all nonimmigrant temporary workers fell under the administrative umbrella term "H-2 workers." The nonimmigrant classification "applied to an alien coming to perform any type of temporary service or labor." INS Interim Rule, 52 Fed.Reg. 20554 (June 1, 1987) (available on LEXIS, Genfed Library, Allreg File). Congress enacted 8 U.S.C. § 1188 in November, 1986, see note 8 *infra*, which "moved agricultural labor off into a new H-2A classification." INS Interim Rule, 52 Fed. Reg. 20554.

INS thus redesignated in 1987 the categories of temporary agricultural and nonagricultural workers consistent with the enactment of 8 U.S. C. § 1188. As we discuss in the text, 8 CFR 214.2(h)(3) currently applies only to temporary agricultural workers. DOL apparently cited the pre-§ 1188 version of 8 CFR 214.2(h)(3) in denying the labor certifications, two weeks *after* the

INS promulgation of the interim rule on June 1, 1987. *See* note 3 *supra*.

We also note that during the pendency of this appeal, DOL and INS have issued proposed rules which relate to regulations involved in this dispute. *See* DOL Proposed Rule, 20 CFR Part 655, 53 Fed.Reg. 43722 (Oct. 28, 1988) (in part stating that 20 CFR § 655.00 is also issued under 8 CFR 214.2(h)(4)(i) (1988), and that Subparts A and C of 20 CFR § 655 are also issued under 8 CFR Part 214.2(h)(4)(i)); INS Proposed Rule, 8 CFR Part 214, 53 Fed.Reg. 43217 (Oct. 26, 1988) (in part defining temporary services and revising guidelines under which employers may file H-2B certification petitions.

**8.** Other statutory provisions may or may not bear on this dispute. Congress has provided that "the following class[ ] of aliens shall be ineligible to receive visas and shall be excluded

## B. *Exhaustion of Administrative Remedies.*

We would not judge prudently today if we determined whether DOL has acted consistent with the Administrative Procedure Act in these circumstances. On the record before us, the Employer has failed to exhaust its administrative remedies under the existing regulations as they are read and acted upon by DOL and, by all indications, INS.

■ 1. *Standards.* Ordinarily, an administrative performance must be complete before an intelligent, appropriate review may be written by a federal court. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir.1974); *accord Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768, 771 (5th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). The exhaustion requirement avoids " 'premature interruption of the administrative process,' and allows the administrative agency to utilize its discretion, apply its expertise, correct its own errors, and handle its business expeditiously." *Merrill Lynch v. NASD*, 616 F.2d 1363, 1370 (5th Cir.1980), (quoting *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969)), *citing, Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *accord Steere Tank Lines v. ICC*, 675 F.2d 763, 766 (5th Cir.1982); *Baldwin Metals*, 642 F.2d at 771–72. "Exhaustion is required in part because of the possibility that administrative review might obviate the need for judicial review. That the administrative process might not have this effect is not usually a reason for bypassing it." *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir.1974).

In certain instances, however, a review may become appropriate although an administrative performance has not reached a formal resolution. A litigant may bypass formally outstanding administrative processes, for example, "when there is no adequate administrative remedy, or when irreparable injury is likely to result absent immediate judicial review." *Lewis v. Reagan*, 660 F.2d 124, 127 (5th Cir.1981). "In short, only those remedies which provide a real opportunity for adequate relief need be exhausted." *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir.1978), *citing, Hodges v. Callaway*, 499 F.2d 417 (5th Cir.1974).

■ 2. *Insufficiently Developed Record.* We address one threshold issue before we orchestrate our resolution of this case. The record below is missing a page that apparently contains climactic passages. Although the district court completed its performance in the absence of the missing notes, apparently playing from memory, we believe that the wiser course is to follow the score as it is written.

The score contains no passages indicating that the INS has acted finally in this case, yet the district court concluded that (1) the employer had presented a petition to the INS on behalf of one alien that INS

from admission into the United States: ... Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified ... and available ... and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed." 8 U.S.C. § 1182(a)(14). This provision appears to concern only the permanent employment of aliens.

In 1986, Congress amended the Immigration and Nationality Act, specifically directing DOL by statute to determine in the *agricultural* context, upon petition of an employer, both the effect of temporary alien employment on wages and working conditions and qualified worker availability in the United States. 8 U.S.C. § 1186 (Pub.L. 99–603, Title III, § 301(c), Nov. 6, 1986. Section 1186 was recodified as § 1188 in 1988. *See* Pub.L. 100–525, § 2(*l*)(2), (3), Oct. 24, 1988).

Because of our disposition of this case, we have no occasion to decide whether these provisions bear on Congressional intent in the immediate nonimmigrant alien, nonagricultural temporary employment context. *See also* 8 U.S.C. § 1184(c). Nor do we have occasion to decide whether a specific statutory directive to DOL to make a market conditions analysis limits the discretion of DOL to make a threshold temporariness inquiry in determining whether to grant or deny a labor certification.

denied; and (2) a petition to INS regarding the other alien would be futile because the positions of the aliens are identical. Apparently, the district court reached its conclusions based on representations of The Sweet Life's counsel in one of its briefs below that the INS had acted finally with respect to one of the alien workers. (R. 40). Indeed, the Employer attaches to its appellate reply brief the INS Commissioner's denial of the Employer's petition concerning one of the alien workers on December 15, 1987. The Employer filed its complaint on August 10, 1987.

We cannot consider today the decision of the INS Commissioner. The record on appeal is constituted by the "original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court...." Fed.R.App.Pro. 10(a). Since the document containing the INS ruling is not part of the record below, we may not consider its existence simply because the Employer attached the document to its appellate brief. Fed.R.App.Pro. 30(a); *Galvin v. OSHA*, 860 F.2d 181, 185 (5th Cir. 1988); *accord In re GHR Energy Corp.*, 791 F.2d 1200, 1201–02 (5th Cir.1986) ("this court is barred from considering filings outside the record on appeal, and attachments to briefs do not suffice") (citations omitted).

The Employer's representations below fall short of the documentary evidence, reflecting the content of the INS' ruling, necessary to evaluate sufficiently the role of the INS in this case. Because we must confine ourselves to the record, we thus decline to assume that the INS has appeared on the stage of the symphony hall, much less played a leading part. We leave to the district court in its encore performance a determination of the score's proper content.

**3.** *Regulatory Scheme.* DOL acted in this case pursuant to the authority of the INS. See 20 CFR §§ 621.1–3 (relying for promulgation on INS regulations at 8 CFR § 214.2). Under the INS regulations at 8 CFR § 214.2(h)(4)(i), an employer may submit a nonimmigrant visa petition to the INS. If DOL has provided notice that a temporary labor certification cannot be made, as it did in this case, "the petitioner shall be permitted to present countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor have been observed. All such evidence submitted will be considered in the adjudication of the petition." 8 CFR § 214.2(h)(4)(i)(B).

The Employer argues that INS merely rubber stamps threshold DOL certification denials based on failure to demonstrate temporary need, and that 8 CFR § 214.2(h)(4)(i)(B) by its terms does not provide for meaningful review of such denials.[9] However, the INS has issued at least one administrative decision asserting that INS reviews DOL certification denials regardless of DOL's asserted reasons. *Matter of Golden Dragon Restaurant*, INS Interim Decision #2987, October 5, 1984. In *Golden Dragon*, a Chinese restaurant sought to employ a nonimmigrant alien as a specialty chef. The DOL denied labor certification, as DOL did in this case, on the ground that the employer failed to demonstrate a temporary need for the labor. On appeal to INS, the Commissioner, affirming both the DOL denial and the decision of an INS district director, and citing 8 CFR § 214.2(h)(3),[10] held that "the role of the Department of Labor in temporary worker proceedings is an advisory one[.] ... [T]emporary labor certification determinations by the Department of Labor are not binding on the Immigration and Naturalization Service." *Id.*

---

**9.** We express no view concerning the substantive differences, if any, between a DOL temporariness determination, subject to INS review and then judicial review, and an INS temporariness determination in the first instance subject to judicial review.

**10.** At the time the INS Commissioner decided *Matter of Golden Dragon*, 8 CFR 214.2(h)(3) applied to temporary agricultural *and* nonagricultural workers. See notes 3 and 7 *supra*.

Thus, the regulatory scheme, as viewed by DOL and apparently by INS, demonstrates that DOL acts in a subordinate, advisory capacity to INS. Because INS may reject a DOL denial of certification, INS may remedy, before judicial review occurs, an injury allegedly caused by an erroneous or improper DOL denial of certification. No exception to the exhaustion requirement requires a contrary conclusion on this record. The employer has not contended that irreparable injury may result absent immediate review. *Lewis v. Reagan,* 660 F.2d at 127. And as we have discussed, we hold no view concerning the futility of appeal to INS because we must assume on the record before us that the Employer has taken no appeal to INS, and we decline to hold on the record before us that INS in all cases undertakes no substantive review of DOL certification denials.[11]

As we wrote fifteen years ago in another context, "[w]e emphasize that our holding is only that [The Sweet Life] approached the courthouse prematurely and that the court below erred in permitting [the Employer] to enter without first surmounting the exhaustion hurdle." *Hodges v. Callaway,* 499 F.2d 417, 424 (5th Cir.1974). While The Sweet Life pleads that the INS' role in the regulatory scheme evidences no meaningful content, we do not confront the merits of this argument today. "[The Sweet Life] would synonomize pessimism with futility, but courts must—at least initially—indulge the optimistic presumption that [agencies] will afford [petitioning employers] the protections vouchsafed by the Constitution, by the statutes, and by [their] own regulations." *Id.*

On remand, if this case eventually reaches a point where full adjudication on the merits is appropriate, we note that the role of the INS would likely be important in determining whether a DOL threshold denial of a labor certification, based on a determination that particular work is not temporary in nature, is within the scope of DOL

authority. As we have discussed, the district court relied on the DOL guidelines, which are simply a rule-related notice and do not have the force of law, as conclusive proof that DOL acted within the scope of its authority in this case. DOL's internal guidelines, however, have given rise to this dispute. Whether DOL has acted within the scope of its authority is a question of Congressional and INS intent.

The regulatory schematics governing temporary labor certifications evidence a dualistic operation. We are loathe to alter or obscure those schematics on the record before us today.[12]

VACATED AND REMANDED.

---

**11.** We have carefully read and considered the First Circuit's decision in *Elton Orchards, Inc. v. Brennan,* 508 F.2d 493, 497–98. (1st Cir.1974). *Elton Orchards* is distinguishable from this case in several respects, and does not bind us in any event.

**12.** Because of our disposition today, we do not decide whether DOL acted arbitrarily and capriciously in denying the labor certifications, just as we do not decide whether DOL acted within the scope of its authority.