**MILENA SHIP MANAGEMENT COMPANY LTD., et al.,**

v.

**R. Richard NEWCOMB, et al.**

Civ. A. No. 92–2535.

United States District Court, E.D. Louisiana.

Aug. 10, 1992.

---

John Harold Clegg, Douglas L. Grundmeyer, and Daphne P. McNutt, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiffs.

Nancy Ann Nungesser, U.S. Attorney's Office, New Orleans, La., for defendants.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is plaintiffs' motion for a preliminary injunction. Because the injunction would be against the public interest of the United States, the motion is DENIED.

### BACKGROUND

In response to the hostilities unfolding in the republics once known as Yugoslavia, and resolutions of the United Nations imposing economic sanctions on the Federal Republic of Yugoslavia (Serbia and Mon-

tenegro), President Bush issued two executive orders imposing economic sanctions on that government.[1] In Executive Order 12808, the President blocked

> all property and interests in property in the name of the Government of the Socialist Federal Republic of Yugoslavia or the Government of the Federal Republic of Yugoslavia that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons.

Executive Order 12810 prohibited all imports to the United States from Yugoslavia and all exports from the United States to Yugoslavia.

On July 6, 1992, the Office of Foreign Assets Control (OFAC) issued a notification that "[a]ll entities located or organized in Serbia and Montenegro, and their foreign subsidiaries, are presumed to be owned or controlled by the Government of Yugoslavia." The OFAC document also mandated that "all assets within U.S. jurisdiction owned or controlled by these entities are to be treated as blocked." The list of blocked Yugoslavian companies in this notice included Jugoslovanska Oceanska Plovidba (JOP).

U.S. Customs agents charged with carrying out this order have detained two vessels, the M/V Zeta and the M/V Moslavina, in the Port of New Orleans. Others, the M/V Kapetan Martinovic and the M/V Durmitor were detained in the Ports of Savannah and Baltimore. Some bank accounts were also frozen. Plaintiffs here maintain that the blocking order is improper because all these vessels fly the flag of Malta, and all are owned and operated by Maltese companies formed in May 1992. They say that plaintiff South Cross Shipping, Ltd. owns the Zeta and the Durmitor and plaintiff South Adriatic Bulk Shipping, Ltd. owns the Moslavina and the Kapetan Martinovic. All the vessels are managed and operated by plaintiff Milena Ship Management Co. of Malta.

JOP is, however, the parent to the companies that currently, at least nominally, directly own and manage the vessels. JOP has existed for many years. In fact, its present head began years ago as a deck boy with the company. OFAC's blocking order is apparently based on the government's finding that these companies are "foreign subsidiaries" of JOP so that they, like JOP (a Yugoslavian company) are presumed to be owned or controlled by the Yugoslavian government. Plaintiffs deny that JOP is connected with the Yugoslavian government.

Plaintiffs applied to OFAC for an order unblocking the frozen assets. OFAC has not ruled on that application, and apparently awaits guidance from a United Nations committee before acting on the application. The plaintiffs have filed suit here for declaratory and injunctive relief directed at undoing the blocking order. This motion for a preliminary injunction asks the Court to order the assets unblocked pending a final Court determination of the validity of the administrative freeze order.

### I. *Justiciability and Reviewability*

Before the Court can proceed to the merits of plaintiffs' request for a preliminary injunction, the Court must address three threshold issues which implicate the Court's power to hear the plaintiffs' claims at all: (1) Whether the case presents a non-justiciable political question; (2) Whether OFAC has taken a final administrative action that is reviewable under § 706 of the Administrative Procedures Act; and (3) Whether judicial review is barred because the plaintiffs have not exhausted their administrative remedies before OFAC.

### A. *Political Question*

█ Plaintiffs' challenge to OFAC's decision to block its vessels and bank accounts does not present a political question. Thirty years ago the U.S. Supreme Court described the essence of a non-justiciable political question:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitu-

---

**1.** For purposes of the executive orders (and this motion), the "Federal Republic of Yugoslavia" or "Yugoslavia" means the republics of Serbia and Montenegro.

tional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of the kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962); *see also United States v. Munoz–Flores,* 495 U.S. 385, 389–90, 110 S.Ct. 1964, 1968, 109 L.Ed.2d 384 (1990).

The government maintains that because this case challenges actions which intimately implicate United States foreign policy interests, the Court should decline review. This argument seems to rely on the political question doctrine's articulated policy of safeguarding notions of separation of powers by protecting the executive's Constitutional responsibility for the nation's foreign policy. However, as even the government admits, the fact that judicial review of an OFAC decision would somehow involve United States foreign policy is not determinative. The Supreme Court has long held that "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker,* 369 U.S. at 211, 82 S.Ct. at 707. Rather, when deciding whether a political question is involved, a court must closely examine the particular issues presented in the case. *Id.* The analysis is heavily fact-driven. Otherwise, all presidential executive orders could be said to invoke the political question doctrine and would claim immunity from judicial review.

■ Thus, the Court must carefully consider the extent to which this case involves basic foreign policy decisions entrusted solely to the executive in discharge of its Constitutional role. Executive action that only indirectly also gives content to some foreign policy issue is not outside the scope of review. Judicial review is prohibited only "[i]n the narrow band of government action where foreign policy interests are direct and substantial." *Spacil v. Crowe,* 489 F.2d 614, 619 (5 Cir.1974). Thus, "[i]ssues which are not at base sweeping challenges to the Executive's foreign policy typically are adjudicated by the courts because they do not involve judicial usurpation of the Executive's constitutional powers to manage foreign affairs." *Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1512 (D.C.Cir.1984) (en banc), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985).

In *Ramirez,* the court held that no political question was presented because plaintiffs were not:

> seek[ing] to adjudicate the lawfulness of the United States military presence abroad. Instead, they [were] seek[ing] adjudication of the narrow issue whether the United States defendants [could] run military exercises throughout the plaintiff's private pastures when their land [had] not been lawfully expropriated. They [did] not challenge the United States military presence in Honduras or in Central America, nor [did] they object to United States sponsorship of a Regional Military Training Center in Honduras. Plaintiffs' claim ... [was] narrowly focused on the lawfulness of the United States defendants' occupation and use of the plaintiffs' cattle ranch.

*Id.* The court then reasoned that the case was a "paradigmatic" one for judicial resolution because "federal courts historically have resolved disputes over land, even when the United States military is occupying the property at issue." *Id.* The distinction between direct as opposed to indirect involvement of foreign policy must be kept in mind.

Similarly, the plaintiffs here have not advanced a comprehensive challenge to the President's strategy or authority regarding how this nation and others confront the present Yugoslavian problem. Plaintiffs have not challenged the President's deci-

sion to declare a national emergency. Nor have they questioned the validity of the executive orders imposing economic sanctions against Yugoslavia, including the blocking of government controlled assets. If plaintiffs had asked for court review of these kinds of executive decisions, it is arguable that this Court ought not take review. *See Beacon Products Corp. v. Reagan,* 633 F.Supp. 1191, 1194–95 (D.Mass.1986), *aff'd,* 814 F.2d 1 (1 Cir.1987) (challenge to President's declaration of national emergency because of his determination that Nicaragua posed an unusual and extraordinary threat to national security was non-justiciable political question.).

This case is an administrative law dispute. Plaintiffs have requested judicial review of agency action, OFAC, taken pursuant to an unchallenged executive order. Review of administrative decisions is clearly a time-tested judicial function; in fact, agency actions are presumptively reviewable by federal courts. *See* 5 U.S.C. § 701(a). Indeed, many courts have, without expressly addressing the political question doctrine, reviewed OFAC decisions on unblocking petitions. *See Tagle v. Regan,* 643 F.2d 1058 (5 Cir.1981) (applying Cuban Assets Control Regulations); *Real v. Simon,* 510 F.2d 557 (5 Cir.1975) (applying Trading With the Enemy Act); *Cernuda v. Heavy,* 720 F.Supp. 1544 (S.D.Fla.1989) (applying Trading With the Enemy Act and Cuban Assets Control Regulations); *Behring International, Inc. v. Miller,* 504 F.Supp. 552 (D.N.J.1980) (applying arbitrary and capricious review to OFAC decision that Iran had an interest in assets

blocked according to executive orders and regulations).

The Court holds that the OFAC's decision in this case to block plaintiffs' vessels does not so directly implicate U.S. foreign policy that it is insulated from review. The executive orders are clear. Judicial review of administrative decisions implementing these orders does not hamper the executive's conduct of foreign policy by injecting unacceptable sweeping challenges to foreign policy choices. *See Ramirez, supra.* Instead, the quite limited "arbitrary and capricious" review authorized by the Act merely provides a mechanism to ensure evenhanded application of administration policy. This case is justiciable.

### B. *Finality and Exhaustion of Remedies*

 Plaintiffs' claims are all based on judicial review of an agency's action.[2] But, one must ask, should the agency action be final? The Act and the case literature interpreting it raise two procedural hurdles that one must clear before judicial review of agency action may take place. First, if the agency action at issue is not otherwise made reviewable by statute, § 704 of Act limits judicial review to "final agency action." *See* 5 U.S.C. § 704; *Lujan v. National Wildlife Federation,* 497 U.S. 871, 894, 110 S.Ct. 3177, 3191, 111 L.Ed.2d 695 (1990). This requirement admits only severely limited exceptions. *See Geyen v. Marsh,* 775 F.2d 1303, 1308 n. 6 (5 Cir. 1985). Federal courts "intervene in the administration of the laws when, and only to the extent that, a specific 'final agency

---

**2.** The Administrative Procedures Act provides for judicial review of the challenged OFAC actions. Section 701(a)'s presumption of reviewability "can be rebutted only by a clear showing that judicial review would be inappropriate." *See Tran Qui Than v. Regan,* 658 F.2d 1296, 1301 (9 Cir.1981), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 630 (1982). The government has pointed to nothing (and the Court finds nothing) in either the text of the International Emergency Economic Powers Act, 50 U.S.C. § 1701, or legislative history that provides " 'clear and convincing evidence' of a … legislative intent … [to] restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Further, the "committed to

agency discretion" exception is quite narrow and applies only when "statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). Neither the IEEPA nor the executive orders implicate this exception to § 701(a). Thus, OFAC's initial decision to block the vessels is not exempted from this Court's statutory power of review. *See Tran Qui Than, supra* (district court had power, under Administrative Procedures Act, to review OFAC's decision to refuse to unblock assets blocked pursuant to executive orders and regulations advanced under Trading With the Enemy Act).

action' has an actual or immediately threatened effect." *Lujan*, 497 U.S. at ——, 110 S.Ct. at 3191. Second, it has been said in general that one seeking judicial review of an agency action must exhaust available administrative remedies before going to court. *See Sweet Life v. Dole*, 876 F.2d 402, 407 (5 Cir.1989).

Although these two criteria are closely related, the Fifth Circuit has distinguished between them. Agency action is final when it results in "the imposition of an obligation, the denial of a right, or the fixing of a legal relationship." *United State Department of Justice v. Federal Labor Relations Authority*, 727 F.2d 481, 493 (5 Cir.1984). And according to § 704, if an action is otherwise final, it is final "whether or not there has been presented or determined an application ... for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704. Thus, the Fifth Circuit instructs this Court that agency action is final according to the prevailing definition is a " 'final agency action,' regardless of [a] right to seek administrative review." *Geyen, supra*.

◼ In this circuit, therefore, the requirements of finality and exhaustion of remedies are separate, although closely related. *Id.* Exhaustion defines when an action may be reviewed and finality determines what type of action may be reviewed. *Id.* Hence, there can be finality without exhaustion. *Id.*

In this case, plaintiffs' claims revolve around two agency actions. Plaintiffs seek review of OFAC's decision to "treat[ ] as blocked" all entities that were "located or organized in Serbia or Montenegro, and their foreign subsidiaries" under OFAC's determination that such entities were "presumed to be owned or controlled by the government of Yugoslavia." Also, plaintiffs characterize as final agency action OFAC's decision to defer ruling on plaintiffs' request to unblock their vessels until OFAC can obtain guidance from a special United Nations committee on the status of the ships.

◼ The first action is final but the second is not. OFAC's decision to apply the presumption to JOP and its foreign subsidiaries and to block all its assets in the United States clearly imposes obligations (the burdens associated with the blocking), denies rights (the plaintiff's rights to freely use and transfer and deal with their property) and fixes a legal relationship (the relationship between the plaintiffs as the targets of a blocking order and the United States as the issuer of the blocking order). Thus, the decision is final for purposes of the Administrative Procedures Act. *See Federal Labor Relations, supra*. However, OFAC's decision to defer a ruling until a later time is, by its terms, not yet final. Simply put, OFAC has not yet decided anything about unblocking.

The procedure by which one can petition OFAC for a license or an unblocking is properly characterized as an avenue of administrative review of an OFAC blocking order. 31 C.F.R. § 500.802 provides that "[a]ny interested person desiring the unblocking of accounts or other property on the ground that no person having an interest in the property is a designated national may file ... an application" for a license or for a decision unblocking the property. This regulation clearly contemplates agency review of a previous blocking order in light of evidence that the subject company is not foreign-controlled. The process is separate in its construct. It creates another avenue within OFAC for one subject to a blocking order to obtain agency review. Thus, under the general rule, this remedy must be exhausted before judicial review may be obtained. *See Sweet Life, supra*.

In sum, the Court is faced with the following setting for purposes of judicial review under the Act. OFAC, by imposing a blocking order on the assets of JOP and its foreign subsidiaries, has taken a final agency action as required by § 704. The plaintiffs have pursued their administrative remedies by filing an application for an unblocking order with the OFAC. However, the plaintiffs have filed a claim for

review of the unblocking order in this Court before the OFAC administrative review process has run its course.

Thus, the Court's focus narrows to the question whether plaintiffs may have judicial review despite the fact that they have not yet exhausted their administrative remedies before OFAC.

The Fifth Circuit has noted at least two policies supporting the exhaustion of remedies requirement. The exhaustion requirement is important to ensure that courts do not prematurely interrupt orderly agency process, and prevent the agency from "uliliz[ing] its discretion, apply[ing] its expertise, correct[ing] its own errors, and handl[ing] its own business expeditiously." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1370 (5 Cir. 1980); *see also Sweet Life, supra.* Further, exhaustion is justified by judicial economy concerns because "administrative review might obviate the need for judicial review." *Id.* (quoting *Hodges v. Callaway*, 499 F.2d 417, 423 (5 Cir.1974)).

▆ But, importantly, the exhaustion requirement is not absolute. Like most general rules, it has its exceptions. One may obtain immediate judicial review (1) when the administrative remedy is inadequate; or (2) when the one seeking review is likely to suffer irreparable harm in the absence of immediate review. *See Sweet Life, supra.*

Here, plaintiffs urge that if they are denied immediate judicial review and, instead, are required to wait for OFAC to decide their application (presumably after the UN committee gives a decision), they will suffer irreparable harm. The Court agrees. It is true, as the government argues, that "[t]he possibility that adequate compensatory or other relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5 Cir.1975) (quoting *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958)). But, obviously, "[t]he absence of an available rem-edy by which the movant can later recover monetary damages ... may also be sufficient to show irreparable injury." *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5 Cir.1985).

The Court agrees that most, if not all, the plaintiffs' claims of irreparable harm involve monetary damages (loss of business, the expenses of maintaining the vessels while blocked, and the like). However, whether plaintiff could ever obtain monetary relief against either Mr. Newcomb (the OFAC Director), OFAC itself, or the United States is highly problematical. ·*See Tran Qui Than*, 658 F.2d at 1304; *Miranda v. Secretary of the Treasury*, 766 F.2d 1, 5 (1 Cir.1985).

Thus, if the OFAC blocking order against the vessels were eventually found to have been unlawful, the plaintiffs arguably face the serious, if not insurmountable, obstacle to the recovery of any damages they have sustained. Although only monetary, the damages plaintiffs will continue to suffer while the vessels are blocked could be said to be irreparable. The Court, therefore, may review OFAC's decision to block plaintiffs' vessels despite the fact that plaintiffs have not exhausted all their administrative remedies in OFAC.

## II. *The Injunction*

The basic standards governing a court's consideration of a motion for a preliminary injunction are familiar, and they bind this Court. When considering an application for a preliminary injunction, a court must determine: (1) whether the movant will suffer irreparable injury unless the injunction issues; (2) whether there is a substantial likelihood that the applicant will prevail on the merits; (3) whether the threatened injury to the movant outweighs whatever harm the injunction would cause opposing parties; and (4) whether an injunction is in the public interest. *See, e.g., Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5 Cir.1989); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5 Cir.1984).

■ In applying these standards, a court "must remember that a preliminary injunction is an extraordinary and drastic remedy." *Canal Authority v. Callaway,* 489 F.2d 567, 573 (5 Cir.1974). The movant bears a patently heavy burden of proof, *see Hardin v. Houston Chronicle Publishing Co.,* 572 F.2d 1106, 1107 (5 Cir.1978), and if it fails to carry the burden on any one of the four criteria, the court may not grant the injunction. *See Enterprise International,* 762 F.2d at 472; *see also Allied Marketing, supra.*

Moreover, plaintiffs ask for a mandatory preliminary injunction. That must be emphasized; they have asked the Court to grant functionally all, if not all, the relief they ultimately seek. "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite,* is particularly disfavored, and should not be issued unless the facts and law clearly favor the nonmoving party." *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5 Cir.1976) (citations omitted). These principles inform the Court's decision today.

### A. The Merits

■ Plaintiffs strenuously assert that it was arbitrary and capricious for OFAC to decide that, when issuing its blocking orders, it would presume that all entities organized under Serbian or Montenegrin law and their foreign subsidiaries are controlled by the Yugoslavian government. OFAC blocked JOP's assets because of this presumption.

■ Section 706 of the Act provides, in part, that a reviewing court shall:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

In the administrative process context, the Court must accord the agency's decision a "presumption of regularity," *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823, and

the Court cannot substitute its judgment for that of the agency.[3] *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

Thus, the Court's role in reviewing an agency decision consists of deciding "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 824. An administrative rule is arbitrary and capricious when:

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Association,* 463 U.S. at 43, 103 S.Ct. at 2867.

Arguably, the OFAC presumption was mistaken. But whether it was an arbitrary mistake, or a capricious mistake (given the confused and uncertain state of Yugoslavian law) is unclear. OFAC says it relied on a paper written by Dr. Branko Vukmir, a legal advisor to the United Nations, to invoke the presumption. The paper, titled "Privatization in Yugoslavia", explains the effects of the Yugoslavian economic reforms on corporations.

Plaintiffs counter that Vukmir writes that under the Yugoslavian Constitution of 1974, the government could not own property, and businesses were run by workers' councils. In fact, Vukmir concludes that "Yugoslavia enterprises were not considered as state enterprises and their property was not considered as state-owned property." Vukmir says that there simply was no such thing as "ownership" of businesses by anyone in Yugoslavia before 1989.

The government counters that OFAC considered Vukmir's characterization of the

---

**3.** Errors of law are reviewed *de novo,* but if error is found the matter is remanded to the agency for further consideration. *Pollgreen v.*

*Morris,* 770 F.2d 1536, 1543 (11 Cir.1985). Whether an error of law was committed has not been established by plaintiffs.

1989–90 privatization reforms and concluded that it was reasonable to assume that the government nevertheless retained control of supposedly private businesses. This is because, as Vukmir notes, when a privatizing firm sells shares to private individuals, the proceeds of the sale are placed in a fund that is still controlled by the government of the republic in which the company is located.

The distinction between privatization and "social property" in Yugoslavia remains undefined on this record. No evidence establishes the absence of some governmental presence in the concept of social property. And JOP's head, Captain Samardzic, was undeniably the foreign minister of Montenegro until he resigned July 31, 1992 to go to Malta.

### B. *The Public Interest*

Of central importance to the Court, which overrides all other considerations, is the question whether a preliminary injunction in this case would serve the public interest. The public interest overarches all else because of the world backdrop against which OFAC's action was taken. In examining the impact a similar order would have on the public interest, this Court in another case noted the reasoning of the District of Columbia Circuit:

> While it is clear as a general proposition that judicial relief may be available for unlawful actions committed by the Executive Branch, even in areas touching on foreign relations, ... this principle does not allow the court blindly to issue injunctive relief without due consideration for the doctrine of separation of powers.

*Medvid By Jeziersky v. New Orleans Police Department*, 621 F.Supp. 503, 508 (E.D.La.1985) (quoting *Ukrainian–American Bar Association, Inc. v. Schultz*, No. 85–3487, slip op. at 6 (D.C.Cir. November 5, 1985)).

The line between the political question doctrine and considerations regarding the relief sought and the public interest is hazy indeed. Although the Court has concluded that OFAC's decision in this case does not so directly implicate the President's power to conduct foreign policy so as to make

judicial review inappropriate, the Court must still take into account the effect a preliminary injunction would have on the executive's ability to conduct foreign affairs, on the Congressional policy behind the authorization of blocking orders, and on this country's obligations with respect to the United Nations. The Court holds that granting a preliminary injunction unblocking the plaintiffs' vessels and bank accounts before a full hearing on the merits of OFAC's blocking decisions would risk impermissible interference with Executive and Congressional decisions regarding blocking orders in general, and the specific blocking orders at issue in this case.

The Supreme Court has recognized that Congress authorized presidential blocking orders so that in times of crisis the President could marshall control of foreign assets. *See Dames & Moore v. Regan*, 453 U.S. 654, 673, 101 S.Ct. 2972, 2983, 69 L.Ed.2d 918 (1981); *Propper v. Clark*, 337 U.S. 472, 493, 69 S.Ct. 1333, 1345, 93 L.Ed. 1480 (1949). Blocking orders

> permit the President to maintain the foreign assets at his disposal for use in negotiating the resolution of a declared national emergency. The frozen assets serve as a "bargaining chip" to be used by the President when dealing with a hostile country.

*Dames & Moore*, 453 U.S. at 673, 101 S.Ct. at 2983.

In this case, a preliminary injunction will have the effect of a permanent injunction. Once the vessels and bank accounts are preliminarily unblocked, these assets will be lost forever to the President's control. A bond merely assures recovery of their value; it does not assure the President's control. Surely, if the bank accounts and vessels are somehow influenced by the Yugoslavian government, an issue on which the evidence has been inconclusive, temporary unblocking would provide an opportunity for the principals to remove the property forever from the jurisdiction of the United States. The President will have permanently lost an important bargaining position in the negotiations with Yugoslavia and could be viewed in the world

community as having reduced in importance the U.N. sanctions that have been adopted in the several resolutions. And plaintiffs have failed to prove that the seized properties are not subject to pervasive governmental control.

The Court is extraordinarily reluctant to deprive the President the leverage he has by virtue of U.S. laws and U.N. action, even temporarily. A hearing on a preliminary injunction by its nature does not allow the Court the means to fully develop a record. Everyone recognizes the characteristic haste in which these matters arise. In the preliminary injunction setting, any decision on the merits of the case is usually only a rough estimation of whether the one seeking extraordinary relief is likely to eventually prove his case. But the ultimate merits of a case remain subject to change as the contours of the parties' positions take shape through the trial process. In sum, a Court's decision on a preliminary injunction request that a party is likely to succeed on the merits is, obviously, subject to change as the record is fully developed. And what the laws of the region were at one time or another remains enshrouded in dispute.

In this case, plaintiffs may, in the end, prove that the Yugoslavian government has no interest in the blocked vessels and bank accounts. Indeed, it may even be likely that they will do so. However, the plaintiffs' evidence is not so overwhelming that the Court can rule conclusively; that is not the Court's role in this setting. The government could well eventually prove that the Yugoslavian government had control of the vessels and bank accounts. At best, the present record can give plaintiffs little comfort.

This uncertainty underscores the risk in this case that a preliminary injunction would interfere with the President's ability to deal effectively with the Yugoslavian problem. If it is ultimately proved that the Yugoslavian government controlled the blocked assets, the Court's decision to grant preliminary relief will have done an obvious disservice. One far more serious than the wrongful seizure that has been argued here.

Separation of powers dictates that some judicial review of the OFAC's decisions in this case be available. But this sacred constitutional principle likewise animates the Court's reluctance to interfere with OFAC's decisions before a full hearing on the merits, because of the real risk that early (and consequently, somewhat uninformed) interference could limit the President's diplomatic options.

Accordingly, plaintiffs' motion for a preliminary injunction is DENIED.